## Tudor v. Security Trust Company.

(Decided March 12, 1915.)

### Appeal from Jessamine Circuit Court.

1. Executors and Administrators—Decedents—Settlement—Demand.—In an action to settle a decedent's estate to which both the administrator and a claimant who holds a mortgage lien on the decedent's real estate are parties, and the pleadings show that the personal estate of the decedent is insufficient to pay the debts, no demand by the holder of the mortgage is necessary before asserting his mortgage lien in the action.

2. Contracts—Agreement—Consideration.—If a party is already bound to do a particular thing, either by a general law or by an existing contract, an agreement to extend favors or grant extension of time to him in consideration of his doing that which he had previously bound himself to do, furnishes no consideration for the agreement or promise.

3. Mortgages—Mortgage Lien Upon Decedent's Real Estate.—The holder of a mortgage lien on decedent's real estate, who is a party to an action to settle same, and whose debt is past due, will not be deprived of his right to enforce his lien because of an issue between the heirs at law as to whether the land may be divided without materially impairing its value.

WM. J. BAXTER for appellant.

JOHN H. WELCH for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Susan Tudor died intestate August, 1913, a resident of Jessamine County, and the owner of about 206 acres of land therein.

On the 11th of March, 1911, she borrowed $4,000 from the Security Trust Company of Lexington, and to secure the payment of which she executed a note payable

in three years, together with a mortgage on the tract of land named.

V. K. Tudor qualified as administrator of the estate, and, on the 26th of March, 1914, part of the heirs-at-law instituted this action against the administrator and the remaining heirs-at-law and the Security Trust Company, seeking a settlement of the estate, wherein they allege the ownership by the decedent of the 206 acres of land, the existence of the mortgage debt thereon, that the personal estate of the decedent was insufficient to pay the debts of the estate, and that the land could not be divided without materially impairing its value, and prayed for a sale of the land, the payment of the debts and the division of the proceeds.

On the 5th of June, 1914, the administrator and the remaining heirs-at-law filed their answer denying that it would be necessary to sell the tract of land described in the petition for the purpose of paying the debts of the estate, but do not deny the allegation in the petition that the personal estate of the decedent is insufficient for that purpose; they deny that the land cannot be divided without materially impairing its value, and assert that it could be so divided.

On the 8th of June, 1914, the Security Trust Company filed its answer, which was made a cross-petition, setting up its mortgage debt and prayed for a sale of the land to satisfy same. In answer to this cross-petition the administrator and the heirs-at-law, who are his co-defendants, pleaded that the administrator had at some time, not specifically stated, paid the interest on the mortgage debt up to March 11th, 1914, and then entered into an agreement with the Security Trust Company that, in consideration of the administrator paying the interest on said $4,000 note, the Security Trust Company agreed to extend the payment of said note and not to file suit thereon until the_____of October, 1914.

Under this state of the pleadings on the 12th day of June, 1914, the court entered a judgment ordering a sale of the land, or so much thereof as might be necessary to pay the debt of the Security Trust Company, and from that judgment the administrator and his co-defendants prosecute this appeal.

The cross-petition of the Security Trust Company was accompanied by the customary affidavit in the proper form proving the claim against the decedent's estate;

but the administrator filed his affidavit showing that no demand for the payment of same had been made of him, and asked for a rule against the Security Trust Company to show cause why its cross-petition should not be dismissed for that reason, which motion was over-ruled. This it is urged was error in view of the statute expressly requiring demand before the institution of suit against the estate of a decedent. But it will be observed that the Security Trust Company was brought into court by a part of the heirs-at-law and that the pleadings in the action admitted that the personal estate of the decedent was insufficient for the payment of her debts, and as the purpose of the statute is to enable the administrator to pay debts without incurring unnecessary costs, there seems to be no reason why the Security Trust Company should have made a demand which it knew from the pleadings in the case to which it was a party, could not be complied with. It would have been a useless procedure to have demanded of an administrator the payment of a debt out of the personal estate of his intestate when the pleadings in an action, to which both the claimant and the administrator were parties, showed that there was no such estate on hand with which to pay the claim.

The case of Millet & Co. v. Watkins' Admr., 4 Bush, 642, was where the administrator had instituted an action against defendant, who, in his answer, asserted certain set-offs, accompanied by the proper affidavit, but there had been no demand. The court in considering the necessity of the demand under such circumstances said:

"The enactment in itself is provident and beneficial in reaching the conscience of the claimant as to the justness of the debt, its freedom from usury, and other legal reasons for its non-payment, and in furnishing to the personal representative a sufficient voucher without incurring costs in useless litigation.

"These reasons for requiring the demand do not apply when the personal representative has himself commenced the litigation, which necessarily involves the expenditure of money in costs, and he will have the judgment of the court as the evidence of the result."

This action instituted by a part of the heirs-at-law seeking a sale of the land necessarily involved the incurring of court costs whether the Security Trust Company had asserted its mortgage lien or not, and in this

case, as in that just quoted from, there was no reason or necessity for making the demand.

The case of Crane & Breed Mfg. Co. v. Stagg's Admr., 135 Ky., 428, was where a claimant's action against an administrator had been dismissed because the claim had not been verified or its payment demanded before suit. The court, in reversing that judgment, said:

"The object of the statute in respect to the verification of claims against decedents' estates is to protect them against unjust or fraudulent claims, and the reason for requiring the claimant, before bringing an action on his claim, to make demand of payment, is to afford the personal representative an opportunity to pay it without cost of suit, and at the same time have a legal voucher of such payment. If, however, there are no assets in the hands of the personal representative with which to pay the decedent's debts, or such as he may have be insufficient for that purpose, but the decedent left real estate liable for such debts, there can be no reason or necessity for a creditor's presenting his claim, accompanied by the statutory affidavit, to the personal representative, in order to entitle him (the creditor) to bring suit for the purpose of subjecting such real estate to the payment of the decedent's debts, including his own."

It is further urged for the appellants that the lower court erred in sustaining a demurrer to their pleading wherein there was asserted a parol contract between the administrator and the Security Trust Company by which the latter agreed, in consideration of the payment of the interest up to March 11th, 1914, not to enforce the collection of the note until October, 1914. The pleading of appellants does not allege when the interest, which was paid up to the 11th of March, 1914, was paid, or that any part of the interest so paid was paid in advance, and, construing its pleading most strongly against it, it must be assumed that the payment of the interest, so alleged to have been paid, was not made until on or after the 11th of March, 1914, and at that date it had already accrued. Even if the Trust Company made the agreement asserted there was no consideration for it unless the interest so paid was paid in advance. Where a party is already bound to do a thing, either by a general law or by an existing contract, an agreement to extend favors or grant an extension of time to him in considera-

tion of his doing that which it is already his duty to do, furnishes no consideration for the agreement or promise. He has undertaken no new obligation, but has only agreed to do that which he had previously bound himself to do.

The debt of the Trust Company was past due when it was asserted; its mortgage embraced the whole of the land, and the fact that the heirs-at-law as between themselves had made an issue as to whether the land might be divided without materially impairing its value, in no way deprives the Trust Company of its right to an enforcement of its mortgage lien.

The court properly adjudged the sale of so much of the land as might be necessary to pay its debt.

The judgment is affirmed.