## Wallace v. Cook.

### (Decided January 21, 1921.)

## Appeal from Garrard Circuit Court.

1. Contracts—Alteration.—A written contract may be altered, modified or even substituted by a subsequent oral one in all cases where the law does not require the contract to be in writing; but for the oral alteration or modification to be effective it must be supported by a legal consideration which need not be the payment of money or delivery of property, but it may be anything which is of benefit to the promisor or detriment to the promise. And, "benefit" in this connection means that the promisor has in return for his promise acquired some legal right to which he would not otherwise have been entitled; while the word "detriment" as so used means that the promisee has in return for the promise forborne some legal right which he otherwise would have been entitled to exercise.

2. Contracts—Failure of Consideration.—In the absence of the payment of money or the delivery of property, or an agreement to do so, and in the absence of some such *benefit* or *detriment* as above defined there is a failure of consideration and no legal rights accrue to the parties.

3. Contracts—Construction—Intention of Parties.—In the interpretation of contracts courts are chiefly concerned as to the intention of the parties as expressed by the terms they employ, which is always to be administered if it can be ascertained from the entire contract.

4. Contracts—Intention of Parties.—In arriving at the intention of the parties words may be discarded as surplusage when necessary to effectuate the intention, and if a contract is equally susceptible to two constructions, the one being equitable and just to the parties, while the other is oppressive and inequitable, to one of them and places him at the mercy of the other, the more equitable interpretation will be adopted; likewise in such cases if necessary to reconcile the ambiguity and to administer the intention of the parties it will be construed more strictly against the one who prepared and printed it and who employed the words in which it is expressed.

5. Contracts—Construction.—In case of an irreconcilable conflict between written words and figures in a contract the figures will surrender to the written words and the latter will prevail.

6. Contracts—Construction.—Where a written contract with a real estate agent for the sale of land provided that he should have until "60 days" in which to sell it and then provided that the sale should be at auction and held not later than a stipulated day which was far short of the "60 days:" Held, that the term "60 days" should be discarded, since it was plainly the intention of the parties to provide for only one sale, which was at "auction"

and which was to occur on or before the day fixed in the contract for it.

LEWIS L. WALKER for appellant.

J. E. ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On August 30, 1919, appellee and defendant below, W. R. Cook, signed and delivered to appellant and plaintiff below, Oliver T. Wallace, a written contract authorizing the latter to sell the farm of the former situated in Garrard county and containing about 500 acres. The contract is in the nature of a letter addressed to plaintiff at his home in Wilmington, North Carolina. It is on a printed form with blanks filled with pencil writing and interlineations and erasures made in the same way. In its completed form, omitting address and signature, it reads:

"Being desirous of selling my land, same being below described, to-wit: About 500 acres on old Danville pike near Lancaster, Ky., I hereby place in your hands, exclusively, until 60 days with the understanding that you are to offer same for sale at auction, within before the 15th of September, days from this date: you to do such advertising as you may deem necessary, in the way of prizes, newspapers, handbills, circular letters, posters, etc., to furnish advance man, auctioneer, and ground man to show prospective bidders the strong points of the lots or tracts and endeavor to induce them to bid on same.

"You agree to do the necessary surveying, cleaning, staking and diagraming, and to lend co-operation in making the sale a success. You are to furnish a man to superintend the developing of the property without any cost to me for said superintendence, and are to determine the size, number and character of the lots or tracts. Whenever a map or drawing is submitted showing the layout of the property I agree to place a minimum price on each lot or tract, the total minimum prices to aggregate $250.00 per acre. You are to sell the property subject to confirmation, and I agree to confirm the sales on the following basis: Any tract that brings the minimum price or above.

"On date of sale, I agree to pay you 1/3 of all over minimum price any tract brings of the gross receipts arising from the sale, out of which you pay all your expenses. I will make the following terms to purchasers ...................................cash, the balance in....................years from date of sale, with interest on the deferred payments at the rate of..............................% per annum, and will allow a .............................. I agree to take at face value all notes and mortgages arising from the sale. Seeding privileges fall 1919. Purchasers pay 1920 taxes. It is understood that I will have no by-bidders at this sale. This is the only agreement existing between the parties hereto relative to the sale of this land."

On the back of the contract defendant wrote and signed this stipulation: "I agree that the minimum amount to be received by you in event of no sale shall be $250.00." Among the written insertions in the printed form are the expressions "60 days" and, "before the 15th of Sept." In the printed form of the contract it is stated that plaintiff might sell "privately or at auction" but the words "privately or" are stricken out with a pencil mark through them so as to make the contract provide for only a "sale at auction" and it must be "before the 15th of Sept." After the execution of the contract plaintiff fixed his auction sale for September 12, 1919, and pursuant to the right conferred upon him in the contract he divided the entire tract into seven separate parcels or lots and caused a plat to be made showing the various subdivisions, together with the number of acres in each, and after this was done and before the sale, defendant placed a minimum price per acre on each of the seven lots or subdivisions of his farm so as to make an average minimum price of its entire acreage, the sum of $250.00 per acre as stipulated in the contract. The minimum price of lots numbers 1, 2, 3 and 4 was $275.00 per acre and on lots numbers 5, 6 and 7, $210.00 per acre. Lot number 3 contained the residence of defendant and upon the adjoining lot number 2 was located a barn and other outbuildings on the farm. Lot number 1 on the day of the sale was offered first and it sold for $285.00 per acre and then lot number 3, upon which was located the dwelling, was offered and it sold for $277.50 per acre. No bid for either of the other lots amounted to a sum equal to the minimum price fixed thereon by defendant; but he in

the exercise of what he claimed to be his right under the contract accepted and confirmed the highest bids offered for the last five lots, notwithstanding they were under the minimum price, and the aggregate thereof plus the more than the minimum price offered on lots numbers 1 and 3 equalled a total sum of $119,097.40, for the whole farm, which was an average of $238.12 instead of $250.00 per acre. After the sale a dispute arose between the parties over the amount due plaintiff as commission for his services under the contract; the defendant claiming that he was entitled to only the sum of $280.91 (being 1/3 of the excess above the minimum price of $275.00 which lots numbers 1 and 3 sold for and which 1/3 of such excess exceeded $250.00), while plaintiff insisted that he was entitled to 3% of the gross amount of the sales of all the lots ($119,097.40), which per centum amounted to $3,572.92, and he brought this suit against defendant to recover the latter sum.

In his petition he alleged that on the day of the sale and before it was commenced or before it was completed (it does not appear which) he and defendant entered into an oral agreement to the effect that if defendant should confirm and accept the sale of any lot or lots for which the highest bid was less than the minimum price fixed thereon, then and in that event, plaintiff was to receive 3% of the entire amount of the sales in lieu of ''all over minimum price any tract brings'' as stipulated in the written contract. A demurrer was sustained to the petition and plaintiff filed two amendments, the substance of which was that when the writing was executed defendant stated that he did not intend to confirm or accept any sale below the minimum price which he might fix on any tract or lot, and that on the day of sale he notified plaintiff that he had changed his mind and he intended to exercise what he claimed to be his right under the contract to accept any bid which he saw proper whether it equalled or exceeded the minimum fixed price or not, and that thereupon the oral contract sued on was entered into. A demurrer filed to the petition as thus amended was likewise sustained and the court gave judgment for the sum of $280.91, the amount to which plaintiff was entitled under the written contract, and dismissed his petition in so far as it sought a recovery for any other sum, and to reverse that judgment plaintiff appeals.

There can be no doubt of the legal proposition that it is competent for parties to vary, alter or modify a prior written contract by a subsequent oral agreement in all cases where the contract is not one required by law to be in writing. This is a fundamental doctrine with reference to contracts. John King Co. v. L. & N. R. R. Co., 131 Ky. 46; Shadwick v. Smith, 147 Ky. 159, and Murray v. Boyd, 165 Ky. 625. But, it is equally true (a proposition sustained by all the authorities as well as by the reason and logic of the law) that the orally substituted contract, or the oral modification, must conform to the principles of the law relating to the execution of valid and enforcible contracts, i. e., such oral agreements must be supported by a valid consideration, otherwise no rights accrue thereunder. It was the absence of a consideration to support the oral contract sued on, as held by the trial court, that induced him to sustain the demurrers to plaintiff's pleading and to dismiss his suit. The only question then in the case is whether there was a valid consideration for the oral contract sued on.

It is a fundamental principle, with which even the law student is familiar, that a consideration sufficient to uphold a contract need not be the payment of money, or the delivery of property, since it is sufficient if the thing agreed to is "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." 13 Corpus Juris, and Van Winkle v. King, 145 Ky. 691. By the word "benefit" in this definition is meant "that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled," and by the word "detriment" in the definition is meant, "that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise." Corpus Juris, *supra*, 311-312, and pages 315-316 and numerous cases cited in note 90. As a corrollary to the above definition of a valid consideration for a contract it is held by the courts and stated by text writers that: "A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration." 13 Corpus Juris

351. See also as sustaining the quotation McDevitt v. Stokes, 174 Ky. 515; Tudor v. Security Trust Co., 163 Ky. 514; Eblin v. Miller, 78 Ky. 371, and 9 Cyc., pages 312, 316 and 347.

In the light of these well settled principles of the law relating to contracts our task is to determine whether there was a valid consideration for the oral contract which plaintiff attempts to enforce. As we understand his counsel the principal, if not the only, contention made in brief is that the written contract gave plaintiff the exclusive right for 60 days after August 30, 1919, to sell defendant's farm, and that in as much as a sale was made by defendant on September 12 thereafter, through his confirmation of the offered bids *under* the minimum price fixed by him, the exclusive right of plaintiff to sell the farm until that date was surrendered which, it is contended, furnished a sufficient consideration for the oral agreement. If plaintiff's counsel is correct in his interpretation of the written contract there can be no doubt of the correctness of his conclusion; so that it becomes necessary to construe the written contract according to the leading and all prevailing rule, i. e., the intention of the parties as gathered from the entire contract. Siler v. White Star Coal Co., 190 Ky. 7. At the outset it is perfectly patent to our minds that there is an irreconcilable conflict between the terms ''60 days'' and the terms ''before the 15th of Sept.,'' found in the written contract, as measuring the time within which the sale contracted for shall be made. Evidently, as is shown by erasing the printed word ''privately'' therein, the only sale contemplated by the parties was one ''at auction,'' and even that character of sale must be made ''before the 15th of Sept.'' There can be no escape from the conclusion that such was the intention of the parties, for the contract says so in plain and unambiguous terms. Moreover, that interpretation was the one put upon it by the parties, since there was never any attempt on the part of plaintiff to make a private sale of the property, nor to make a sale at auction except on the day he fixed, viz.: September 12, 1919. He does not allege his intention or purpose to have offered the land for sale after the 12th and before the 15th of September, or at any other time thereafter up to the expiration of the 60 days. But, if he had so alleged it would not aid his cause, since as we have seen, only one

auction sale was contemplated. "Where necessary to effectuate the intention of the parties, a word or phrase may be disregarded" (13 Corpus Juris 535), and "in case of an inconsistency between words and figures in a contract the words govern." Corpus Juris, *supra,* 537; United Surety Co. v. Summers, 110 Md. 95, 72 Atl. 775, and Romie v. Haag (Mo.), 178 S. W. R. 147.

If the interpretation of the written contract contended for by plaintiff is the true one then it would become possible for him to place defendant in such position as to obtain from the latter a fraudulent and undue advantage, to extricate him from which he would be compelled to submit to almost any terms which plaintiff might see proper to impose. This is seen when it is remembered that plaintiff under the written contract could sell any subdivided tract or lot of plaintiff's farm which he might select, provided he obtained a bid equal to or above the minimum price fixed thereon. Under such right the parcel containing the dwelling could be sold first, or near the first one (as was done in this case) and if the other parcels did not bring the minimum price plaintiff would not only be deprived of his dwelling, but would also have his farm divided because of the sale of the lot upon which his dwelling was located. In that situation, if plaintiff's contention be true, defendant could not accept or confirm the sale of the other lots or make a sale himself thereof until the expiration of the 60 days. With defendant in this dilemma plaintiff was in a condition to obtain a most advantageous alteration of the written contract. Clearly it was not intended by the parties in executing the written contract for defendant to be placed in any such situation. Such construction would render the contract extremely oppressive to defendant and place him largely at the mercy of plaintiff, who, according to his construction, could destroy the unity of defendant's farm with the latter's right to protect himself perhaps dangerously postponed. Courts, when the language employed is capable of a different construction, will not adopt the oppressive one. Elliott on Contracts, section 1521, and 13 Corpus Juris 540. Moreover, we have seen that the original contract was both prepared and printed by plaintiff. Its words are those of his own choosing and the rule is in such cases, if the contract is ambiguous and equally susceptible to two constructions, that one will be adopted which is the

least advantageous to the one who prepared and printed it. Corpus Juris, *supra,* pages 544-545. Applying these various rules we feel quite confident that it was the intention of the parties in the execution of the written contract to stipulate for only one sale of defendant's farm, which was to be *at auction,* and it to occur between the date of the contract and September 15th following, and that defendant agreed therein to confirm all sales at or above the fixed minimum price, leaving him free to reject or confirm all sales for less than that price. In view of this interpretation of the contract what, may we inquire, did defendant obtain through the oral contract more or greater than he was entitled to under the written contract? It bound plaintiff to survey the lots, advertise the sale and carry it out. For that he was to receive the stipulated compensation. Defendant had the right under that contract, as we have seen, to either reject or confirm all bids below the minimum price fixed, but was compelled to confirm all bids at or above that price. The oral contract alleged did not alter the written one in these respects one *particle.* On the other hand, as we have seen, plaintiff in agreeing to the oral contract surrendered and parted with no right which the written contract gave him. As to the oral contract, then, it is clearly a case where there was no ''benefit to the party promising (defendant) or loss or detriment to the party to whom the promise was made'' (plaintiff). Neither did the promisor (defendant) acquire any legal right by the oral contract to which he was not entitled under the written contract nor was there any forbearance of any legal right by plaintiff which he was entitled to exercise and enjoy under the written contract. Our conclusion therefore is that under the rules, *supra,* for the interpretation of contracts the term ''60 days,'' found therein, should be disregarded, since it was not the intention of the parties for the plaintiff to have that time within which to carry out the one ''auction sale'' therein provided for, and therefore, plaintiff surrendered nothing as a consideration for the alleged oral contract sued on, nor did defendant receive anything by reason of the oral contract to which he was not entitled under the written one. There is nothing in this court's opinion in the Shadwick case, *supra,* cited and relied on by counsel for plaintiff in conflict with the views above expressed. There the consideration for the oral agreement altering

the written one was the additional efforts on the part of plaintiff to sell the land within the agreed extended time and the benefits which defendant might receive therefrom. It was expressly so held by the court. No such considerations appear in this record and the opinion in that case is not in point.

Having reached this conclusion it necessarily results that there was no consideration for the oral contract and the court properly sustained a demurrer to plaintiff's petition as amended and the judgment dismissing it is affirmed.