## Ex Parte Walker's Executor, On Petition.

(Decided Nov. 9, 1933.)

112

JACKSON W. SPARROW for appellants.
EDWARD W. PFLUEGER and C. A. SHROTTER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On September 17, 1928, Charles A. J. Walker executed and delivered to the Rev. Frank T. Enderis, D. D., and the Board of Trustees of the Immanuel Methodist Episcopal Church of Covington, Ky., three instruments of writing designated in the record as A, B, and C, respectively, and reading:

"September 17, 1928

"Rev. Frank T. Enderis, D. D. and Board of Trustees of Immanuel Methodist Episcopal Church Covington, Ky.

"Dear Doctor Enderis and Brethren: In consideration of the Board of Trustees of Immanuel Methodist of Covington, Kentucky, agreeing to build a new church to cost not less than Two Hundred Thousand [$200,000.00] Dollars, and in further consideration of the subscriptions of members of the church for the said purpose, I hereby subscribe the sum of Twenty-Five Thousand [$25,000.00] Dollars payable when the contract for the new church is signed.

"This subscription is made on behalf of myself, my son Gordon Walker, Carol W. Hoefinghoff and Lee W. Hoefinghoff.

"Charles A. J. Walker

"Attest: Mary C. Cronin."

"September 17, 1928

"Rev. Frank T. Enderis, D. D. and Board of Trustees of Immanuel Methodist Episcopal Church Covington, Ky.

"Dear Doctor and Brethren: In consideration of the Board of Trustees of Immanuel Methodist Episcopal Church of Covington, Kentucky, planning for a church to cost not less than Two Hundred Thousand [$200,000.00] Dollars, and entering into

a financial campaign for that purpose within the next three months, I hereby agree and bind myself, my heirs, executors, administrators and assigns, to contribute the sum of Ten Thousand [$10,000.00] Dollars for the purpose of erecting in said church an organ as a memorial to Natalie Beck Walker, the said sum to be used so far as necessary for the payment and construction of said organ. Should the same not be entirely used for that purpose, the balance shall become an endowment fund, the net income of which shall be used towards the expense of purchasing music and paying such expenses as may be necessary to furnish good music for the said church.

"Charles A. J. Walker

"Attest: Mary C. Cronin."

"September 17, 1928

"Rev. Frank T. Enderis, D. D. and Board of Trustees of Immanuel Methodist Episcopal Church Covington, Ky.

"Dear Doctor Enaeris and Brethren: In consideration of the building of a new church by the Board of Trustees of Immanuel Methodist Episcopal Church of Covington, Kentucky, and of their agreement not to try to sell the present church property until the new church is well on its way, and then proceed to sell it with the proviso that we may continue to occupy the old church, I hereby agree and bind myself, my heirs, executors, administrators and assigns, to purchase and pay for the old church property and parsonage at the southeast corner of Tenth and Russell Streets, Covington, Kentucky, the sum of Twenty-five Thousand [$25,000.00] Dollars. Should the Trustees find a sale for said property at that figure, or at a larger figure, they are at liberty to make a sale at that time with the provision that we must be allowed to use the property until we move into the new church.

"I am binding myself to this agreement in consideration of the fact that it is the intention of the Board of Trustees to build a church to cost not less than Two Hundred Thousand [$200,000.00] Dollars for the building, not including the lot, and that they will go into the consideration of plans and make a financial campaign within the next three months.

"Sincerely yours, Charles A. J. Walker."

On November 5, 1928, Mr. Walker struck out the date on the writings A and B and inserted the latter date, and added at the bottom of A below the signature of himself and the attesting witness, the words, ''This cancels a former subscription signed by me,'' and again affixed his signature which was likewise attested by Mary C. Cronin.

Charles A. J. Walker died testate on November 12, 1928, and the Covington Trust & Banking Company, which was nominated in his will as executor, was appointed and duly qualified as such. Among the papers found in the safe deposit box of decedent was a carbon copy of the first instrument of writing hereinbefore described to which was attached two notes dated August 15, 1928, against Walter H. Wuerdeman.

The executor instituted this action in the Kenton circuit court under the Declaratory Judgment Act (Civil Code of Practice, secs. 639a-1 to 639a-12)., and, after setting out the foregoing instruments of writing, alleged that the Immanuel Methodist Episcopal Church of Covington, hereinafter called the church, had conducted a campaign for subscriptions to pay for the erection of a new church building and had secured subscriptions in the sum of $126,000, including the two subscriptions of $25,000 and $10,000 made by Mr. Walker and evidenced by the two writings above described; that the church had employed an architect to draw up plans for a church building to cost in excess of $200,000; that the church congregation is ready and willing to sign a contract for the erection of the new church, but does not feel justified in signing the contract therefor until assured that the pledges made by Mr. Walker will be paid; that the church did enter into consideration of plans and making a financial campaign next succeeding the 17th day of September, 1928; that it has not sold nor made any effort to sell the old church or parsonage referred to in the instrument of writing dated September 17, 1928.

The prayer of the petition is for a declaration of rights and that the court declare and adjudicate whether the writings described in the petition, or either of them, made by deceased to the church, are valid and binding pledges and shall be paid by the executor and also what disposition shall be made of the Walter H. Wuerdeman notes attached to the carbon copy as hereinbefore set out; as to whether they shall be deemed to constitute a payment of the pledge, collateral thereon, or otherwise;

that the church and Carol W. Hoefinghoff and Charles Gordon Walker, heirs of deceased, be notified of the pendency of this action and given the privilege of intervening.

By its separate answer the church admitted the allegations of the petition and further averred that decedent was at the time of his death and for many years prior thereto a member of the board of trustees of the church and a devoted member thereof; that for several years prior to his death he was the moving spirit in a plan to build a new church and that at his instance a campaign was inaugurated to raise funds for the purchase of a site for the erection of a church which resulted in the acquisition of a site at the corner of Madison avenue and Robbins street in the city of Covington for which the church has paid the sum of $53,000; that it still possesses the old church property which has a value of from $35.000 to $40,000; that the church inaugurated a campaign to raise funds for the building of the church and has obtained from members and friends pledges totalling $126,000, and, in addition thereto, the church has set apart in a building fund the sum of $25,-000; that the campaign is still progressing and other pledges will be obtained.

It asked that the court adjudge that the pledges mentioned in the petition be legal, binding, and enforceable and that the executor be required to pay same when the church, through its constituted officers, enters into a contract for the building of a church to cost not less than $200,000; that the Wuerdeman notes be adjudged collateral to secure the payment of the pledges; and that the guarantee of deceased to purchase the old church site and parsonage for $25,000 be adjudged legal, valid, and binding.

By separate answer Carol W. Hoefinghoff and Mary B. Walker, guardian of Charles Gordon Walker, joined in the prayer of the petition and asked for a declaration and adjudication of the matters therein set forth.

After hearing the evidence of a number of witnesses as to the circumstances attending the execution of the three instruments described in the petition, the changes of date on the two pledges and the various activities and steps looking to the consummation of the plans for the erection of a church building, the chancellor adjudged each of the three writings to be a valid and

binding obligation against the decedent's estate and in a written opinion set forth the reasons for his findings.

By this appeal the executor and heirs of decedent are asking for a reversal of the lower court's findings on the grounds hereinafter discussed. The church, of course, is asking that the judgment be affirmed in all particulars, however, it may be said at the outset that none of the parties make any question as to the validity of the $10,000 pledge. In brief for the executor and heirs it is stated in effect that apart from any question as to the legality of this pledge they would refrain as a matter of sentiment from attacking its validity; but in passing to a discussion of the other instruments it may be properly said that the pledge was unconditional except as to the time in which the campaign for raising funds with which to erect the church building should be initiated and that condition was met and complied with by the church. It is therefore manifest that the lower court's finding with respect to this pledge is correct.

It is argued by counsel on behalf of the executor and heirs that it was not intended by deceased that the $25,000 pledge to the building fund should become binding unless and until the other members of the church made subscriptions sufficient to bring the total for that purpose to $200,000 and in making this argument counsel places great significance on the difference between the wording of this pledge and that of the $10,000 pledge, the legality of which is conceded. It is pointed out that the $10,000 is to be given in consideration of the church planning for a new building to cost not less than $200,000 and entering into a financial campaign for that purpose within three months after November 5, 1928, and the other is given in consideration of the officers of the church agreeing "to build a new church to cost not less than Two Hundred Thousand [$200,000] Dollars and in further consideration of the subscriptions of members of the church for the said purpose." Stress is placed on the use of the word "the" in the quoted provisions of the pledge because it has been defined by courts in various jurisdictions as meaning "all," "all of the," etc. Reasoning from this, counsel reaches the conclusion that the pledge of $25,000 is conditioned upon supplemental subscriptions by others to produce in the aggregate not less than the minimum amount specified in the pledge.

As a cardinal principle relating to the construction

of a contract, it has long been recognized and held in this and other jurisdictions that where the instrument is so clear and free of ambiguity as to be self-interpretive, it needs no construction and will be performed or enforced in accordance with its express terms. C. P. Powers & Sons v. J. E. Brogdon Sheet Metal Works, 231 Ky. 103, 21 S. W. (2d) 131; Niagara Fire Insurance Co. v. Mullins, 218 Ky. 473, 291 S. W. 760; Hendrix Mill & Lumber Co. v. Meador, 228 Ky. 844, 16 S. W. (2d) 482. Where, however, the language of the contract is ambiguous and the intent and purpose of the parties is expressed in obscure and uncertain terms, courts may resort to established rules of construction. In so doing it is neither the duty nor province of the court to make a contract for the parties but to so interpret the language and construe the contract as to carry out its purpose and intent. Garnes v. Frazier & Foster (Ky.) 118 S. W. 998; White Star Coal Company v. Pursifull, 186 Ky. 697, 217 S. W. 1020; Atkins v. Atkins' Adm'r, 203 Ky. 291, 262 S. W. 268.

In attempting to ascertain the meaning of the parties, courts will not look to a single word or expression but to the contract as a whole. City of Covington v. S. C. & C. Street R. Co., 147 Ky. 326, 144 S. W. 17; Wallace v. Cook, 190 Ky. 262, 227 S. W. 279; Sower v. Lillard, 207 Ky. 283, 269 S. W. 330. Viewing this writing in the light of the foregoing rules and taking into consideration the situation of the parties and the circumstances attending its execution, as we are authorized to do under the rule recognized in Mogg et al. v. Farley, 205 Ky. 25, 265 S. W. 449, it is manifest that Mr. Walker intended that the pledge should become a binding obligation and "payable when the contract for the new church is signed."

It is argued by counsel for the executor and heirs that the last contract referred to in the petition is void and not enforceable because (1) the church failed to comply with the condition imposed upon it in that it did not "go into a consideration of plans and make a financial campaign within the next three months" and (2) that this obligation was canceled by the words, "This cancels a former subscription signed by me," written at the bottom of the $25,000 pledge as above indicated.

While the evidence indicates that no written pledges were taken until the early part of January following the

execution of this contract, it is established beyond question that plans for the raising of the funds had been entered into and the campaign was well under way, in fact Mr. Walker was in some of the meetings where plans were discussed and some of the activities were directed by him from his home. As evidence of the fact that it was not his intention that the financial campaign should be made and completed within three months after he signed the agreement, it is shown that he discussed with other officers of the church the proposition of borrowing from banks such sums as might be necessary to carry out the proposed contract for a church building to cost not less than $200,000. Applying the rules of construction above enunciated to this contract and in the light of the proven facts and circumstances, it is apparent that the church did meet with the conditions imposed by the contract as intended and understood by the parties.

It is argued on behalf of the executor and heirs that by the writing added at the bottom of the $25,000 pledge, Mr. Walker must have meant to cancel his obligation to buy the old church property for $25,000 since on November 5, 1928, he extended his subscription to the building fund and for the installation of the organ in the new church but did not extend the other writing and the evidence shows that no other subscription had been made by him.

At first blush there appears to be real force in this argument, but when we come to a consideration of all the circumstances attending these transactions, it is apparent that Mr. Walker did not have in mind the pledge to buy the old church property when he added and signed the writing at the bottom of the $25,000 pledge. Unquestionably, Mr. Walker was a man of high legal attainment and had had many years experience and training in the practice of his profession. That he possessed sound business judgment is evidenced by the fact that he accumulated an estate of over half million dollars. He must have known that the writing under consideration was not a subscription to the church and he did not so regard it. It was merely an agreement to purchase the old church property at a fixed price, but giving to the officers of the church the privilege of selling it to a better advantage if they could. In effect, it indemnified the church against loss due to depreciation in value by reason of the retention of the old church

property pending plans for and the erection of the new edifice. Certainly, if Mr. Walker had intended to cancel this obligation, he would not have left it outstanding with such an indefinite and obscure expression of that intention. Taking into consideration the nature of the writing in question in connection with all the facts and circumstances revealed by the record, it is apparent that decedent meant by the addendum at the bottom of the $25,000 pledge to cancel his subscription of September 17, 1928, and to make a new and not an additional subscription for the same amount. It is susceptible of no other reasonable interpretation or construction.' It therefore follows that the judgment with respect to the writing evidencing decedent's agreement to purchase the church property is correct even though it may have been based on different grounds.

It is further manifest that the chancellor's finding with respect to the Wuerdeman notes is correct.

Judgment affirmed.