CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Appellants,

v.

ABUNDANCE COAL, INC., Appellee.

No. 2009–CA–001283–MR.

Court of Appeals of Kentucky.

June 24, 2011.

Rehearing Denied Aug. 15, 2011.

Gene F. Zipperle, Jr., Louisville, KY, for appellants.

Ned Pillersdorf, Prestonsburg, KY, for appellee.

Before ACREE, DIXON and KELLER, Judges.

## OPINION

ACREE, Judge:

Certain Underwriters at Lloyd's, London (Lloyd's) appeal an order of the Knott Circuit Court granting the motion of Abundance Coal, Inc. (Abundance) to dismiss Lloyd's declaratory judgment action. Finding the circuit court erroneously dismissed the case, we reverse in part, vacate in part, and remand.

Three plaintiffs sued Abundance in 2007, alleging the coal company's operations had tortiously caused dust to enter their real

property.[1] They asserted that this constituted negligent trespass and sought compensatory, consequential, and punitive damages. In 2009 Lloyd's, Abundance's insurer, filed a complaint pursuant to Kentucky Revised Statute(s)(KRS) 418.040, seeking a declaration that the insurance contract did not provide coverage for the alleged injuries. The insurer cited clauses exempting coverage for punitive damages and pollution.

Abundance filed a motion to dismiss for failure to state a claim upon which relief could be granted. In the motion, Alliance argued the plain language of the insurance agreement required that the circuit court determine the allegations of the Sparkman Complaint were covered by the policy. The circuit court agreed, granted Abundance's motion to dismiss, and ruled Lloyd's was responsible for coverage, exemptions notwithstanding. The insurer appealed.

Lloyd's argues on appeal that the circuit court applied the improper standard to the motion to dismiss and erred in construing the exclusions regarding pollution and punitive damages.

**Standard of review**

■ Lloyd's first argues the circuit court applied the improper standard to Abundance's motion to dismiss. A motion to dismiss is governed by Kentucky Rules of Civil Procedure (CR) 12.02. "Under CR 12.02 a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under

any state of facts which could be proved in support of his claim." *Weller v. McCauley*, 383 S.W.2d 356, 357 (Ky.1964) (citation omitted). "In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 884 (Ky.App.2002). Accordingly, our review of orders of dismissal is *de novo*. *Hamilton–Smith v. Commonwealth*, 285 S.W.3d 307 (Ky.App. 2009).

CR 56 governs motions for summary judgment, which are proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56.03.

In the order now at issue, the circuit court used language more suited to a motion for summary judgment ("the exclusion sought to deny coverage advanced by [Lloyd's] is insufficient as a matter of law."), but, in effect, the order was a dismissal pursuant to CR 12.02. The circuit court relied upon nothing beyond the pleadings to determine Lloyd's was not entitled to relief.[2] Our review is, therefore, unchanged, despite the circuit court's mistaken use of language which applies to motions for summary judgment. We review the order to determine whether it was proper under the standards governing a motion to dismiss.

**Punitive damages**

■ The insurance agreement specifically excludes coverage for punitive dam-

---

1. This underlying complaint will be referred to as the Sparkman Complaint. It was filed by Keith Sparkman, Maria Sparkman, and Keith Hall in the Knott Circuit Court.

2. Because the insurance agreement was an exhibit of the complaint, it became part of the pleadings. CR 10.03.

Lloyd's has also raised concerns that Abundance submitted an affidavit of Ray Slone,

who procured insurance coverage on behalf of the coal company, after Abundance filed its motion to dismiss and Lloyd's had responded. Review of the circuit court's order, however, gives no indication—either explicit or implicit—that it relied upon the facts asserted in the affidavit or any other evidence beyond the pleadings.

ages. Coverage A provides protection for damages for bodily injury or property damage, and Coverage B protects against claims of personal injury or advertising injury. These two provisions contain identical exclusions, which bar coverage for "[c]laims of PUNITIVE or EXEMPLARY DAMAGES, fines, or penalties." (Emphasis in original). There is no ambiguity in this portion of the insurance agreement and, therefore, no need for interpretation or construction of the contract's terms. *Ex parte Walker's Executor*, 253 Ky. 111, 68 S.W.2d 745, 747 (1933) (It is "a cardinal principle relating to the construction of a contract ... that where the instrument is so clear and free of ambiguity as to be self-interpretive, it needs no construction and will be performed or enforced in accordance with its express terms."). The insurance agreement does not cover claims against Abundance for punitive damages.

The order now on appeal granted Abundance's motion to dismiss the declaratory judgment action in its entirety. The circuit court did not address the issue of punitive damages, but the effect of the dismissal was to deny Lloyd's assertion that the policy excused the insurer from covering punitive damages assessed against Abundance. That was improper. To the extent the circuit court's order renders Lloyd's liable for punitive damages Abundance incurs in connection with the Sparkman Complaint, it is reversed.

**Pollution exclusions**

■ Coverage A and Coverage B also contained identical "Absolute Pollution" exclusions. These exclusions prohibited protection from claims that an injury

in whole or in part, is caused by, results from, is attributable to, contributes to[,] or is aggravated by, the actual, alleged[,] or threatened discharge, dispersal, seepage, migration, release, escape of[,] or exposure to pollutants, regardless of the source of the pollutants. This exclusion applies whether the bodily injury or property damage is caused by, arises from, results from[,] or is attributable to any other cause acting in conjunction with said pollutants.

A separate exclusion provides, "such insurance as is afforded by this policy shall not apply to liability for the assured for contamination or pollution of land, water, air[,] or real or personal property for any injuries or damages resulting therefrom[.]"

The insurance agreement further defines a pollutant as

any solid, liquid, gaseous[,] or thermal irritants or contaminants, including smoke, vapor, soot, fumes, acids, sulfates, sulfites, alkalis, chemicals, waste, biological material, mold, mildew[,] and intangibles which negatively affect the health and welfare of people, disrupt ecological balance, or desecrate the environment and negatively impact plants and non-human species.... Pollutant as used herein means any form of pollution as defined above which forms the basis for liability, whether the pollution is said to cause physical injury or not, which by volume or timing or any other factor is said to give rise to liability.

In granting Abundance's motion, the circuit court applied a narrow construction of the language of the exclusions and determined that they did not provide an exemption for the contamination alleged in the Sparkman Complaint.

Lloyd's cites *United States Fidelity and Guaranty Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988), in support of its position that coal dust necessarily constitutes pollution and is, therefore, excluded from coverage. In that case the Sixth Circuit, applying Kentucky law, set forth the exclusion provision which, in sub-

stance, describes the same polluting substance as is at issue before this Court.

> [T]he policy does not apply:
>
> to *bodily injury or property damage* arising out of the discharge, dispersal, release[,] or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials[,] or other irritants, contaminants[,] or pollutants into or upon land, the atmosphere[,] or any watercourse or body of water....

*Star Fire*, 856 F.2d at 33 (quoting insurance policy exclusion). Regarding this provision, the Sixth Circuit, said,

> It is clear that this ... pollution exclusion clause calls off any obligations to provide coverage in cases such as this where the damages are caused by the discharge of coal dust.
>
> We fully agree with the conclusion that this "language is clear and plain, something only a lawyer's ingenuity could make ambiguous." *American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan.1987). "It's strange logic to perceive ambiguity" in this clause. *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986).

*Id.* at 33–34.

Lloyd's urges us to apply *Star Fire* to conclude that the dust and debris, of which the Sparkman plaintiffs complain, are not covered by the insurance policy. We are not persuaded.

First, Kentucky courts are not bound by the holdings of federal court opinions applying or interpreting state law. *LKS Pizza, Inc. v. Com. ex rel. Rudolph*, 169 S.W.3d 46, 49 (Ky.App.2005). Second, *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky.App.1996), casts doubt on *Star Fire*'s broad application, preferring to consider the issue on a case-by-case basis.

In *RSJ*, this Court determined that insurance policies, and their absolute pollution exclusions, which do not appear ambiguous on their face can be ambiguous in application given certain factual situations. *RSJ*, 926 S.W.2d at 680–81. The case before us is such a case.

To determine whether an absolute pollution clause was ambiguous when applied to the claim at issue, this Court in *RSJ* analyzed the claim applying several factors.

The first of those factors was whether "other judges have held alternative interpretations of the same language to be reasonable[.]" *Id.* at 681. The exclusion in *RSJ* utilized similar, albeit not identical, language as is before us and determined that language to be ambiguous. Though not conclusive, this factor is persuasive.

The second factor "is the basic premise that terms used in insurance contracts should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them." *Id.* (citation and quotation marks omitted). In *RSJ*, this Court found telling the use of environmental terms of art, concluding that the use of such terms "reflect[ed] the exclusion's historical objective—avoidance of liability for environmental catastrophes related to intentional industrial pollution." *RSJ*, 926 S.W.2d at 681.[3] The terms referred to in *RSJ* are identical to those in the clause now at issue including "discharge," "dispersal," "seepage," "migration," "release," and "escape." This factor,

---

3. *RSJ* also noted that the Washington Court of Appeals determined "the [standard] provision was meant solely to deprive coverage to active polluters and did not apply where the damage caused was neither expected nor intended." *RSJ*, 926 S.W.2d at 682 (citing *United Pacific Insurance v. Van's Westlake Union*, 34 Wash. App. 708, 664 P.2d 1262 (1983)).

too, weighs in favor of finding ambiguity in the exclusion.

Finally, *RSJ* instructs courts to consider the practical consequences of the way in which we apply a provision. This Court warned of

> absurd consequences that would result from a blind application of the literal terms of the pollution exclusion:
>
> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results.

*RSJ*, 926 S.W.2d at 682 (quoting and adopting the reasoning of *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617, 621–22 (1995)). In so holding, this Court concluded that substances which are ordinarily classified as pollutants (*e.g.*, chemicals like Drano and chlorine) may not be pollutants in a given factual situation (*e.g.*, when spilled on the floor causing a slip and fall). *Id.* Or, in this case, coal dust, debris, and particulate matter may not ordinarily be classified as a pollutant, but such matter may constitute pollution in some cases (such as when the substance that has become airborne is particularly noxious).

Taken as a whole, these factors weigh strongly in favor of finding ambiguity in the insurance agreement. The circuit court properly determined the contract was ambiguous.[4]

█ The circuit court was not correct, however, in concluding that the Sparkman plaintiffs' claims should necessarily be covered by the policy. Ambiguity in an insurance policy does not justify automatic construction of the term in favor of the insured. *RSJ*, 926 S.W.2d at 680. The circuit court should have ascertained whether the injury alleged in the Sparkman complaint was the type contemplated for coverage in the insurance agreement. It was not possible to do so based on the pleadings alone. It is not clear from the record what type of injury the Sparkman plaintiffs alleged. Has the dust made plaintiffs' water undrinkable? Has it caused humans or animals respiratory problems? Allegations such as this might indicate a pollution claim. On the other hand, if they are merely complaining about physical damage to their property or the accumulation of dirt without environmental consequences, that would indicate injuries that do not result from pollution. In sum, the dust at issue here is not a pollutant if it does not cause the irritation, contamination, negative health or environmental effects, or other types of harm contemplated in the insurance agreement.

There is a state of facts under which Lloyd's can prevail, at least in part, based on the policy's pollution exclusions. Dismissal of the complaint was therefore improper. To the extent the circuit court held that all claims based on entry of dust upon a landowner's property are necessarily covered by the policy, it is vacated.

**Conclusions**

Abundance is not entitled to coverage by Lloyd's for punitive damages recoverable by the Sparkman plaintiffs. That portion of the circuit court's order to the contrary is reversed.

---

4. Although the order now on appeal contains no explicit finding that the policy was ambiguous, the circuit court did purport to construe the agreement, which may only be done after the finding of ambiguity. *Ex parte Walker's Executor*, 68 S.W.2d at 747. The circuit court, therefore, implicitly ruled the contract contained ambiguities.

Abundance is not entitled to coverage for injuries the Sparkmans suffered as the result of pollution caused by Abundance.

If, however, dust and debris which allegedly entered the Sparkmans' property do not constitute pollution as defined in the insurance policy, Abundance is entitled to coverage of any amounts for which it is liable on those claims.

Accordingly, we vacate that portion of the circuit court's order which holds Lloyd's policy covers all liability Abundance incurs as the result of the Sparkman Complaint, and remand the matter for additional proceedings consistent with this opinion.

ALL CONCUR.