/s/ John D. Minton, Jr.
CHIEF JUSTICE
All sitting. All concur.

**DCI PROPERTIES–DKY, LLC, Appellant**

v.

**COPPAGE CONSTRUCTION COMPANY, INC., Appellee**

NO. 2013–CA–001932–MR

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 27, 2015; 10:00 A.M.

Rehearing Denied July 14, 2015.

BRIEFS AND ORAL ARGUMENT FOR APPELLANT: Robert B. Craig, Covington, Kentucky

BRIEF FOR APPELLEE: Griffin Terry Sumner, Louisville, Kentucky, William T. Robinson, III, D. Scott Gurney, Florence, Kentucky

ORAL ARGUMENT FOR APPELLEE: Griffin Sumner, Louisville, Kentucky

BEFORE: MAZE, NICKELL AND STUMBO, JUDGES.

## OPINION

STUMBO, JUDGE:

DCI Properties appeals from an order granting Coppage Construction's motion to dismiss. The issues involved are matters of first impression. We find that the trial court erred in dismissing DCI's cause of action; therefore, we reverse and remand for further proceedings.

This case arises out of DCI's construction of a sewer line funded in part with public funds. In 2007, Sanitation District No. 1 of Northern Kentucky (SD1), a public entity, contracted with DCI to design, construct, and manage the project. DCI then subcontracted with Coppage for the actual construction of the sewer line. The project experienced delays and DCI ultimately terminated its contract with Coppage. On September 25, 2008, Coppage filed a lien pursuant to Kentucky Revised Statutes (KRS) 376.210 in the amount of

$3,758,784.31. Pursuant to that statute, because the sewer line was being built by a public entity, Coppage could only put a lien on the funds due to the contractor, DCI.

DCI filed a notice of protest to the lien pursuant to KRS 376.250. Also pursuant to this statute, when DCI protested the lien, SD1 was required to set aside the lien amount from the funds to be paid to DCI under the SD1 contract. Fortunately, Coppage's lien did not result in an immediate cessation of payments by SD1 to DCI because there were sufficient funds available under the contract for SD1 to continue paying DCI until October of 2009. At that point, DCI received no further payment from SD1.

In November of 2008, Coppage filed an action in Campbell Circuit Court to enforce its lien. DCI filed its answer on December 15, 2008, in which it alleged the lien amount was excessive. DCI did not file any kind of counterclaim at this time. On January 4, 2010, the trial court entered an order finding that Coppage's lien was excessive in the amount of $2,977,245.02. On January 28, 2010, the parties agreed to the entry of an order which called for SD1 to set aside $935,041.09 to pay Coppage, released the lien as to $2,823,743.22, and dismissed the action.

On April 14, 2010, DCI filed the underlying complaint pursuant to KRS 376.220(3) seeking damages caused by Coppage's excessive lien. KRS 376.220(3) states:

> If any person files a statement asserting a lien against any contractor on any fund due the contractor, for an amount in excess of the amount actually due, the person filing the lien shall be liable to any person damaged thereby to the extent of such damage, including reasonable court costs and attorney's fees in-

curred by the injured parties. Any such claim for damages may be asserted and prosecuted in the county in which the lien statement was filed.

On May 25, 2010, Coppage filed a motion to dismiss arguing that the claim was barred by Kentucky Rules of Civil Procedure (CR) 13.01 as a compulsory counterclaim to the prior litigation and under general principles of *res judicata*. CR 13.01 states in pertinent part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

In essence, Coppage argued that the KRS 376.220(3) excessive lien claim should have been raised in the enforcement action.

On June 15, 2010, DCI filed a reply to Coppage's motion to dismiss. DCI argued that its claim under KRS 376.220(3) did not accrue until after the enforcement action was terminated and it was determined the lien was excessive. In the alternative, DCI argued that the claim did not accrue until DCI stopped being paid by SD1, which was approximately 10 months after it filed its answer. This would take it out of the province of CR 13.01 because the claim was not ripe "at the time of serving the pleading," said pleading being the answer.

■■■ A hearing was held in this matter on August 15, 2013.[1] On October 25, 2013, the trial court entered an order dismissing DCI's case with prejudice. The trial court stated that if "DCI had a proper

---

1. It is unknown why so little activity occurred in this case for three years.

counterclaim at the time Coppage brought the 08 Case, then it had to bring it as part of that case and nothing in KRS § 376.220(3) can compel to the contrary." The court went on to say that "[i]f a counterclaim is compulsory, failure to bring it bars a later suit under the principles of *res judicata*." The court ultimately found that "once SD1 was prohibited from paying contested monies ... the money was restrained by law; therefore, the injury was mature." The court stated:

the Court finds DCI should have brought the claim it asserts in this action in the 08 Case. This is true even though, at the time it answered, DCI did not know whether ultimately the lien would be enforced or the specific dollar amount of its damage. DCI had been injured, and to impose a requirement that its damages had to be fixed or liquidated to constitute a cognizable claim imposes an additional requirement that is not supported in the law governing public liens.

The trial court then dismissed DCI's claim with prejudice and this appeal followed.

A motion to dismiss is governed by Kentucky Rules of Civil Procedure (CR) 12.02. "Under CR 12.02 a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under any state of facts which could be proved in support of his claim." "In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law." Accordingly, our review of orders of dismissal is *de novo*.

*Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594, 596 (Ky.App.2011) (citations omitted).

The primary issue on appeal is whether or not DCI was required to assert its claim as a counterclaim during the enforcement action. Because the enforcement action and the excessive lien action both involved the same parties and subject matter, this issue can be determined by answering the following question: When did DCI's claim accrue?

■■■ If it accrued before DCI filed its answer in the enforcement action, then the excessive lien claim should have been brought as a counterclaim pursuant to CR 13.01. By not bringing the claim at that time, DCI would be barred from bringing it in a subsequent action due to the civil rule and *res judicata*. Causes of action "may not be split and tried piecemeal." *Egbert v. Curtis*, 695 S.W.2d 123, 124 (Ky. App.1985). Stated another way, *res judicata* is applicable "not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence might have been brought forward at the time." *Id.* (citation omitted). If a compulsory counterclaim should have been brought in a previous action pursuant to CR 13.01, then subsequent litigation of that same claim would be barred by *res judicata*. *Id.*

■■■ DCI argues that its KRS 376.220(3) cause of action did not accrue until after it filed its answer in the enforcement action. "[T]he rule against splitting causes of action does not apply to claims that have not yet accrued. We see no difficulty applying principles of equity to extend this exception to causes of action that accrue while litigation is pending." *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 373 (Ky.2010).

"According to all federal Circuit Courts of Appeal that have addressed this issue ... claim preclusion is measured by claims that had accrued by the time of the original pleading in the earli-

er action." Thus, the bar on bringing any claim which "might have been brought forward at the time" is limited to "claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action."

*Id.* (citations and footnotes omitted).[2]

■ DCI maintains that its current cause of action did not accrue until it was injured. DCI claims it was not injured until SD1 actually stopped paying it in October of 2009. Because this is an issue of first impression and there is no case law directly on point, DCI compares the case *sub judice* to the case of *Capital Holding Corp. v. Bailey,* 873 S.W.2d 187 (Ky.1994). In *Capital Holding,* a construction worker sued a building owner for negligently exposing him to asbestos. The worker had not yet suffered any injury, but sued the owner for "increased risk of future injury or disease and severe emotional distress from the fear of developing cancer." *Id.* at 189. The Kentucky Supreme Court found that the negligent cause of action had not yet accrued because the worker had not yet suffered any harmful result from exposure to the asbestos.

In the alternative, DCI argues that it was not injured until the enforcement action was concluded on January 28 because it was at that time DCI knew whether or not Coppage's lien was valid or excessive. DCI again uses other cases as illustrations to this issue. One such case is *Meade County Bank v. Wheatley,* 910 S.W.2d 233 (Ky.1995). In that case, a bank hired an attorney to perform a title examination on a piece of property. The bank was going to make a first mortgage loan to its customers for this property. The attorney failed to discover a previously recorded mortgage. The bank's customers ultimately defaulted on the loan and the bank began foreclosure proceedings. It was at this time the prior mortgage was discovered. The bank then obtained an appraisal of the property and learned that the property's value was substantially less than the secured claim. The property was eventually sold with the bank being the purchaser. The bank was also required to satisfy the prior mortgage, which had a balance of $80,000. The bank then brought its legal negligence claim.

The Court of Appeals held that the cause of action was time-barred because the bank's cause of action accrued when the bank received the appraisal and became aware of the probability of damages. The Kentucky Supreme Court reversed and held prior to the foreclosure sale, the bank only had a fear that they would suffer a loss. That "fear was not realized as damages until the sale of the property[.]" *Id.* at 235.

DCI also compares this case to *Central Acceptance Corp. v. Rachal,* 264 Ky. 849, 95 S.W.2d 777 (1936). In that case, the plaintiff brought suit against the defendant to recover a sum of money representing the unpaid balance "of a series of notes executed by defendant representing deferred payments of the purchase price of an automobile, and to foreclose a mortgage on the automobile, which, it is alleged, defendant executed to secure the payment of the notes." *Id.* at 777. The defendant denied signing the notes and also filed a counterclaim for malicious prosecution.[3] The Court of Appeals held that the defen-

---

2. Even though this quotation concerns the filing of a complaint, it would apply equally to a compulsory counterclaim brought in an answer. In other words, the "original pleading" in this case would be the answer in the enforcement action.

3. Currently, malicious prosecution only refers to criminal prosecutions. The type of action

dant could not file a counterclaim for malicious prosecution at that time because the cause of action had not accrued. The Court found that "[i]t is fundamental that no cause of action for malicious prosecution can accrue until there has been a final termination of the action upon which the action for malicious prosecution is based." *Id.* at 779.

DCI's arguments are persuasive. We agree with DCI that its cause of action was not a compulsory counterclaim to Coppage's initial lien enforcement action and is not barred by *res judicata.* We believe that DCI's cause of action did not accrue until the enforcement action was concluded. Prior to the conclusion of that action, DCI's injury was merely speculative because it was not known whether Coppage's lien was valid or excessive. On January 28, 2010, DCI knew that Coppage's lien was excessive. "At that time, what was merely probable became fact[.]" *Wheatley* at 235.

For these reasons, we reverse the trial court's dismissal of DCI's cause of action and remand for further proceedings.

ALL CONCUR.

in *Rachal* would today be called wrongful use of civil proceedings.