## J. V. Stone et al. v. Hartford Fire Insurance Company.

(Decided October 25, 1929.)

R. W. LISANBY for appellants.

JOHN C. GATES for appellee.

Opinion of the Court by Judge Rees—Affirming.

For several years prior to December, 1920, C. G. Thompson represented the appellee, Hartford Fire Insurance Company, as agent of its Western Farm Department in Caldwell county. Appellant, J. V. Stone, purchased the agency for a cash consideration of $500 paid to Thompson, and applied to appellee for an agency contract. On December 17, 1920, a contract between Stone and the insurance company, designated a solicitor's agreement, was executed.

Clause 9 of this agreement is as follows:

"That I will return to the company all unearned commissions on premiums on canceled policies, and on notes that are not paid at maturity."

Clause 15 reads in part:

"This agreement can be terminated at any time at the pleasure of the Hartford Fire Insurance Company, and nothing herein shall be construed to the contrary."

The following provision, signed by Stone, appears on the back of the contract:

"I further understand and hereby agree to assume the return commission charged on canceled policies and notes not paid at maturity on all business

now in force in the territory assigned to me, and written by former representatives of the company, and to give every detail of the company's business the same careful attention I would, had I written the business myself.

"I also understand that the Hartford Fire Insurance Company is not obligated to me on account of any sum or sums, paid or to be paid to C. G. Thompson, for his agency interest and good will in the agency of said company, and further understand that this contract may be terminated at the company's pleasure without pecuniary obligation of any kind to me whatever."

Stone also executed and delivered to appellee a bond, bearing the same date as the solicitor's agreement. Dr. Frank Walker signed the bond as surety. One of the conditions of the bond was that Stone should "duly and properly account for and pay over to the said company all premiums, premium notes and proceeds of such notes, coming into his or their hands on or for policies of insurance (and shall pay back to the said company the commissions and fees advanced to him or them, by the said company, on all notes which are not paid at maturity), and shall also refund to the said company the unearned commissions returned under canceled policies."

Stone continued to represent appellee as the agent of its farm department until March, 1925, when appellee, on account of excessive losses, determined to cancel all of its policies on farm property in Caldwell county then in force. In each policy the insurance company reserved the right to cancel it by tendering to the assured the unearned pro rata premium after due notice to that effect. It also appears that on March 17, 1925, the appellee was notified by the deputy insurance commissioner of Kentucky that the license of J. V. Stone was being held up pending investigation of charges that he was not complying with the insurance laws of the state, and appellee was requested to notify Stone not to write any more insurance until he had received a license. On May 4, 1925, the deputy insurance commissioner wrote to appellee, and informed it that the insurance department had refused to renew Stone's license for 1925, on account of charges filed with the department that he was overinsuring property, and appellee was requested to furnish the insurance commissioner with a list of risks written by Stone, with the amount of coverage on each.

Appellee informed Stone some time during April, 1925, that it had determined to discontinue writing insurance on farm property in Caldwell county and to cancel all outstanding policies. It suggested that Stone should endeavor to rewrite these policies in some other company, and thus save the unearned commissions that he had collected. In order to afford Stone an opportunity to rewrite the policies in other companies, the date of cancellation of the outstanding policies was postponed from time to time until August, 1925, when the appellee, being unwilling to assume the risk of further losses, canceled all of the unexpired policies of insurance on farm property in Caldwell county. Appellee then rendered to Stone a bill for the unearned commissions on premiums on such policies as were canceled by it, and which had been advanced to him out of the first premiums paid on such policies. These unearned commissions amounted to $606.47. Stone declined to pay the amount claimed, or any part of it, and this suit was filed against him and the administrator of Frank Walker, who had died subsequent to the execution of the bond which he had signed as surety. From a judgment rendered in favor of plaintiff for the full amount claimed by it, the defendants have appealed.

The defendants filed an answer and counterclaim, and numerous amended answers and counterclaims. Their chief complaint is that the trial court erred in transferring the action to the equity docket. The petition set out the names of all policy holders whose policies had been canceled—more than 70 in number—and the unearned part of the agent's commission returned to each policy holder. The answer put in issue the correctness of these amounts.

Appellee took the deposition of the superintendent of its farm department, who testified at great length in regard to the numerous accounts. After this and other depositions and three amended answers and counterclaims had been filed, the court sustained a motion to transfer the action to the equity docket over the objection of the defendants. The transfer was made under section 10, sub-section 4, of the Civil Code, which provides that the court may, in its discretion, order the transfer of an action from the ordinary to the equity docket, whenever the court shall be of the opinion that such transfer is necessary, because the case involves accounts so complicated, or such great details of facts, as to render

it impracticable for a jury to intelligently try the case." Furthermore, the answer and amended answers presented a number of defenses purely equitable in their nature. Considering the state of the pleadings when the transfer was made, the court did not abuse the discretion vested in it. Brown & Millard v. Crescent Stave Co., 207 Ky. 470, 269 S. W. 739.

The appellants insist that four issues were raised by the pleadings which should have been submitted to a jury:

(1) That the solicitor's agreement, properly interpreted in the light of the circumstances surrounding its execution, did not provide for the general cancellation of policies issued by appellee on applications procured by Stone. This was an issue, not for the jury, but for the court. The agreement is not ambiguous, and requires no extraneous evidence to explain its terms. It contains a provision that it can be terminated at any time at the pleasure of the insurance company, and that nothing therein should be construed to the contrary. It also contains a provision that the agent shall return to the company all unearned commissions on premiums on canceled policies and on notes not paid at maturity. These provisions, when read in connection with the provision, contained in all of the insurance policies, that the insurance company reserves the right to cancel the policies by tendering to the assured the unearned pro rata premium after due notice to that effect, clearly mean that the company could cancel any or all of the policies at any time, and the agent would be required under his contract to return all unearned commissions on premiums that had been collected by him. There was no allegation that any provision had been inserted in the solicitor's agreement, or omitted therefrom by fraud or mistake, but the defendants undertook to introduce evidence to show that it was not contemplated by the parties that all of the policies should be cancelled and the agency thus terminated. This was an effort to contradict the terms of a written contract by parol evidence, which is not permissible. J. B. Colt Co. v. Brown, 224 Ky. 438, 6 S. W. (2d) 473; Farmers' & Traders' Bank of Campton v. Smith, 224 Ky. 761, 7 S. W. (2d) 200; Goldstein v. McDonald, 223 Ky. 161, 3 S. W. (2d) 200.

(2) In one or more of the various amended answers it was alleged that the insurance company agreed to

grant Stone reasonable time to rewrite the business in another company, and that it failed to do this. (3) It was alleged that Stone was given an exclusive agency in Caldwell county, and that the plaintiff company had permitted its agents in other counties to write insurance in Caldwell county, and Stone sought to recover the amount of commissions paid to these agents on such business. (4) It was alleged that the company had agreed to continue the agency in Caldwell county indefinitely, and, by canceling all of its outstanding policies and retiring from Caldwell county, it had breached its contract with Stone, to his damage in the sum of $1,500. Appellants insist that these last three questions should have been submitted to the jury.

It is only necessary to say that they made no motion for any issue out of chancery. However, had such a motion been made and sustained, it would have availed them nothing, since on none of the alleged issues was there sufficient evidence to authorize a submission of the case to the jury, and a directed verdict for the plaintiff would have been proper. Consequently the defendants could not have been prejudiced, even if such a motion had been overruled, though seasonably and properly made. Riffe & Jones v. McKinney Deposit Bank, 171 Ky. 757, 188 S. W. 775. In no event was the defendant Stone entitled to recover on his counterclaim, in which he sought to recover commissions that had been paid to agents from other counties, since the contract does not purport to give him an exclusive agency. Nor was he entitled to any damages because the appellee withdrew from Caldwell county, since, as we have heretofore concluded, the contract clearly gave it the right to terminate the agency and withdraw at any time.

Perceiving no error prejudicial to appellants' substantial rights, the judgment is affirmed.