## Fidelity-Phenix Fire Ins. Co. v. Duvall.

(Decided June 18, 1937.)

GORDON, LAURENT, OGDEN & GALPHIN and J. W. CAMMACK for appellant.

L. M. AICKMAN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellee, Harry Duvall, complaining of injury received and damage sustained by reason of the appellant's breach of contract had relating to the termination of his insurance agency and contract, brought this action for the recovery of damage therefor and for injunctive relief against appellant's alleged continuing breach of contract.

Upon trial of the action had before the court, judgment was awarded for the plaintiff in the sum of $2,000. Hence this appeal.

The facts, upon which rest plaintiff's cause of action, as were alleged and set out in his petition, are in substance as follows:

For many years the plaintiff, Duvall, together with James Davis, had conducted and maintained in Owenton, Owen county, Ky., a partnership fire insurance business under the title of the Duvall-Davis Insurance Agency. As such, they had contracted in 1913 with the appellant Fidelity-Phenix Fire Insurance Company to represent it in the soliciting and procuring of fire, tornado, etc., insurance upon farm property in the county, and by reason of continuous energy, effort and attention given the company's business, it had been developed by the plaintiff agency and extended in the county from a very small and humble beginning to a large and mutually profitable volume, the gross annual premium receipts of which amounted to some $17,000. Notwithstanding such satisfactory consummation resulting from the agency's activities in behalf of the company throughout this long period and in advancement of the company's business in the county, in July or August, 1927, Duvall and Davis were advised that the company desired to terminate their agency in the county and, to such end, to make an inspection of its outstanding insurance risks, for the purpose of lowering or canceling such of its risks written by the plaintiff agency as it might deem expedient or desirable upon making the inspection.

It is agreed that, at the time of this notice given of the termination of Duvall's and Davis' agency in the summer of 1927, it was then acting in such capacity for the appellant company under a written contract of agency, last renewed or entered into with it on May

26, 1924, by the express terms of which it was (among other things) provided that the partnership agency of Duvall and Davis promised and agreed "to solicit and write applications for insurance on farm property, school houses and churches for the party of the first part exclusively and for no other company, in Owen County and writing privilege in adjoining Counties (territory not exclusive), in the State of Kentucky * * * and to forward all such applications, notes and cash received to said party of first part, at its offices in Chicago, subject to approval." In consideration thereof, the company agreed to pay plaintiffs a commission or per cent. if the application was approved and policy issued thereon, and further provided that:

> "In case of the nonpayment at maturity of any note or installment, said party of the second part hereby agrees to refund to the Company within sixty (60) days after maturity of note or installment, the commission that shall have been paid to him on that part of the premium included in all unpaid notes given for the same policy, whether matured or not, and also to refund a proportionate part of the commission *in case of the cancellation of policy or policies for any cause.*" (Italics ours.)

Further it was provided that:

> "Either party may terminate the agency *at any time* by verbal or written notice, but it is understood and agreed that such termination of agency *does not release party of the second part from liability to refund to Company return commission charged because of nonpayment of notes or cancellation of policies.*" (Italics ours.)

Further plaintiff's petition alleged, after setting out the terms of the agency contract had with the appellant company, that:

> "In July, 1927, the defendant expressed its intention and purpose to withdraw from Owen county; that agreeable to that intention a verbal contract was entered into in July, 1927, between plaintiff and defendant, acting by and through its vice-president, J. R. Wilbur, conditions as follows: Defendant with plaintiff's help and assistance was to inspect all risks it had in Owen County at that time, was to cancel undersirable risks, lower risks

it thought too high, leave desirable risks in force; plaintiff to repay defendant return commission on all cancelled risks and a proportionate part of the commission on risks lowered by defendant, and defendant was not to rewrite any new business in Owen County, Kentucky, until the expiration of all of its policies of insurance in Owen County then in force, the last of which expirations of business then in force would expire in December, 1932; that defendant was not to appoint an agent to represent it in Owen County, nor permit its agents in any other county to write insurance business in Owen County until the termination of all of its policy contracts left in force in Owen County which was December, 1932; that plaintiff's policy expirations known only to him and to defendant were not to be disclosed by defendant to any other person, firm, or corporation under any conditions whatsoever.''

Further, it alleged that:

''Immediately following the making of said contract plaintiff proceeded to comply with his part thereof, and did so by going with three different men sent to Owen County by defendant on separate occasions, and at different times and inspecting all the risks of defendant company in this county; that several risks were cancelled, and a number reduced, that said inspection of risks begun in August, 1927, was not finally completed until March, 1928; that upon the completion of said inspection defendant company cancelled certain risks, lowered others, the return commission thereon which plaintiff had received amounting to $1,-157.28 was paid by plaintiff to defendant in compliance with said contract, and which he did not have to repay except for said contract.''

Further, it alleged that thereafter, in the winter of 1928, after plaintiff had paid the return commissions, the defendant ''in violation of said contract and in fraud of plaintiff's rights,'' etc., appointed an agent in Owen county, Ky., ''and proceeded to advertise * * * said appointment; * * * that it further violated and breached said contract by giving, furnishing, or in some other way bringing to the knowledge of its newly appointed agent the valued information of plaintiff's ex-

pirations, which knowledge has been used by its said newly appointed agent to secure valuable and profitable business of this plaintiff, to his hurt and damage.''

Wherefore, plaintiff prayed judgment against defendant for the sum of $2,850; that said defendant be required to disclose the exact amount of business it has done in Owen county in violation of its said contract; that judgment be awarded him that will compensate him for the damage suffered by him as a result of the defendant's wrongful breaching of its contract with him; and that it be enjoined and restrained from soliciting, securing, or writing business in Owen county, Ky., until on and after December 31, 1932.

Following the filing of the petition, defendant moved that the action be transferred to equity, which motion was later overruled. Also, the plaintiff moved that the court order the defendant to file an itemized statement giving the number, name, date, and amount of all policies issued by it in Owen county through its agent, J. P. Wilson, after his appointment as such, which motion was sustained over the objection of the defendant and was later by it filed.

This agreement, as set out in the petition as made with Wilbur, was alleged to have been an oral one.

After instituting this suit by the filing of this petition in June, 1931, some three years thereafter, on July 17, 1934, plaintiff filed his amended petition, alleging that, after his conversation and oral agreement had with Mr. Wilbur in July or August, 1927, and before the inspection was begun or made thereunder with defendant, on October 20, 1927, he and the defendant had entered into a further written contract, setting out the terms and conditions upon which the then existing agency was to be terminated and the inspection made, as follows:

"Owenton, Kentucky,
"October 20, 1927.

"This article of agreement made and entered into this the 20th day of October, 1927, by and between the Fidelity-Phenix Fire Insurance Company of New York of the first part, and Harry Duvall and James E. Davis of Owenton of the second part: Witnesseth: It is hereby agreed and understood on the inspection of farm business in

the said company that any risks canceled Duvall and Davis will pay the charge back commission on the return premium to the Fidelity- Phenix Fire Insurance Company. The said Company will allow pro rata return premium on said cancellation and Duvall and Davis will be allowed to rewrite such risks as agreed upon in one of their other companies and any risks rewritten in the Fidelity-Phenix Fire Insurance Company the said Company will pay Duvall and Davis commission *on the rewriting of such risks.*

"It is understood that Harry Duvall and Jas. E. Davis are to be charged individually on such risks that they have divided between themselves." (Italics ours.)

Plaintiff contends that by this subsequently written contract of October 20, 1927, defendant agreed to pay him the commissions on all policies renewed or rewritten after the inspection and until the expiration of the five-year period, that is, until December 31, 1932, or, as stated by defendant, plaintiff claims that, because he paid the return commission on certain policies that were canceled (even though his contract of agency expressly obligated him to do so in such event), the defendant was nonetheless, in consideration thereof, obligated, as pleaded by him, not to appoint any agent or write any business in Owen county for a period of five years during which its policy expirations extended. In other words, plaintiff both pleads and argues that, because he paid the return commissions to the defendant which he owed or was obligated to return, it under the terms of his written contract, the defendant was yet bound to do what he alleges and states it obligated itself also to do under the terms of the pleaded oral agreement had with the company's representative in July or August, 1927, upon which contract alone was plaintiff's petition and suit based and brought.

To the petition, as well as the later amended petition, the defendant (here appellant) filed its answers, by the first of which it denied that its representative, Mr. Wilbur, made the oral contract as alleged and sued on in the petition and affirmatively pleaded: (1) That in July, 1927, plaintiff was operating under a written

contract of agency made with the defendant in May, 1924 (as set out supra), by the terms of which either party had the right to terminate the agency at any time, by verbal or written notice; (2) that plaintiff did not, under its express provisions, have an exclusive agency in Owen county; (3) that the termination of the agency did not release the plaintiff from liability to refund to the company return commissions charged because of nonpayment of notes or cancellation of policies; and (4) that the commissions paid plaintiff were in full of all services rendered by him.

Further, it pleaded that there was no consideration for the oral agreement, as alleged, made with its vice president, Mr. Wilbur, in July, 1927, and set out in the petition, and denied that it had appointed J. P. Wilson as its agent in Owen county, after termination of the agency held by plaintiff, in violation of any agreement made with him, or that it furnished Wilson any information as to the expiration dates of policies that had been written by plaintiff in the defendant company, or that plaintiff had been damaged by the succeeding agency of Wilson, and, further, that the inspections made were incident to the plaintiff's agency business and that it had paid plaintiff for all services rendered it in connection therewith, which was admitted.

Further, it pleaded, in answer to plaintiff's contentions and alleged construction of their written agreement of October 20, 1927 (as set out in the amended petition), that it was made some three months subsequent to the making of their alleged oral agreement had between them, and that not only did it as such supersede the alleged provisions of such alleged oral agreement, as to the terms upon which the cancellation of plaintiff's agency was to be effected and the inspections made incidental to the termination of the agency, but further contends that, by the terms of this later written agreement, it was nowhere provided nor implied that the defendant was in anywise obligated not to appoint another agent in the county during the succeeding five-year expiration period of the policies written by the closed Duvall-Davis Agency, nor was it thereby bound, nor did it agree, not to write any business in Owen county during such period, nor to pay plaintiff the commissions on all or any of the policies renewed or rewritten during the intervening

period between this inspection then made and December 31, 1932, the farthest expiration date of any of the then outstanding policies written by plaintiff, but its express terms obligated the defendant to pay plaintiff commissions only on such risks as were rewritten, by agreement, by him in the appellant company during the making of the proposed inspection.

Further pleadings made up the issues, when, by agreement of parties and consent of the court, proof was offered and heard in open court as to these matters in controversy.

This proof was very voluminous, involving the writing and later rewriting or renewal of hundreds of policies during this five-year period, and we have reached the conclusion, after a careful study of the whole record, that much of it is here immaterial and irrelevant to our determination and decision of the one pivotal question upon which we find the case here presented turns.

The learned trial court, conceiving that the proof adduced on behalf of plaintiff established his contention that the company had here bargained with its agents, Duvall and Davis, for the termination of their agency and right to make a blanket cancellation upon inspection of their written risks, with refund of commissions, and that an agreement therefor was reached between the company and these agents upon the terms of the alleged oral contract claimed made in July, 1927, with the agency, and, further, that the later written contract of October, 1927, looking also to such end, constituted no variance, when set up and sued on in plaintiff's amended petition, from the cause of action based on the oral contract set out and sued on in his original petition, since the later written contract was in effect substantially the same as the alleged oral contract and, if omitting some of the terms of the alleged oral agreement, it was only intended to be but an incomplete subsequent written statement relating to a part of it, held that by the terms of each of the contracts alike, both oral and written, appellant, expressly or by implication, agreed to do the things therein as claimed by plaintiff and that same were promised in consideration of plaintiff's agreeing to refund the unearned commissions owing the company upon its cancellation of policies written by Duvall

and Davis, and so made an extended finding of both fact and law, holding that the company had breached its contract in that it had appointed, in violation of the alleged agreement, a new agent within the precluded period to represent it in Owen county and had, by such new agent, in violation of its agreement, rewritten numerous policies upon their expiration (which had been written by plaintiff) within the five-year period during which it was contended it had agreed not to rewrite them and, further, that the appellant, by such breach and other violations of its agreements, had damaged the plaintiff in his name and reputation in Owen county as an insurance agent of the company, by failing to withdraw from doing business in the county, after having so published its intention to do so when making inspection of its insurance risks in Owen county written by plaintiff, and by reason of all of which injuries and wrongdoings, allegedly operating to the hurt and damage of plaintiff, it awarded recovery of damages therefor to plaintiff in the sum of $2,000.

Plaintiff, to maintain his cause of action claiming such damage sustained by the appellant's alleged breach of these agreements, introduced in evidence, extended and intricate agency accounts or risks written by it, and as to what ones or part of the four or five hundred policies were outstanding at the time of the inspection or written by the Duvall-Davis Agency in the appellant company and which of these had been, in violation of the company's agreement, later rewritten by their newly appointed agent upon the expiration of the policies, notwithstanding their alleged agreement not to rewrite or renew the plaintiff's policies expiring during the stated five-year period, and, extensive computations were made, based thereon, which we deem it unnecessary to here particularly discuss or go into, due to the fact: (1) That we do not gather from the proof offered in respect to these matters that the defendant company did, in fact, make any agreement with the plaintiffs containing the terms contended for, obligating it not to do the things complained of as having been done by the company in violation of its alleged agreement; and (2) that even if such agreement had been made, and had been valid, as supported by a legal consideration therefor, we do not find that the

claimed agreement was in fact violated or breached by the defendant company.

Without regard to the accuracy of our conclusions reached as to these matters or of the propriety of here bolstering up or fortifying such conclusions reached by a discussion of the evidence supporting it, we are of the opinion that the judgment announced by the trial court was upon yet another ground erroneous and for which it must be reversed, in holding that the plaintiff has here set out a valid cause of action against the defendant as based upon either the alleged breach of the oral contract or the later written contract here in question.

It may here be opportune to state that it is stipulated that for all services rendered appellant by the plaintiff agent, Duvall, in conducting a representative of the company over and around Owen county for the purpose of making its desired inspection of all its outstanding insurance risks, it was expressly agreed between them that he was to be compensated by a cash per diem payment therefor. Further, plaintiff states that he has been fully paid the agreed compensation and is not here making any claim for services rendered by him in connection with making the inspection or that such services rendered were, or constituted, any consideration, or part thereof, for the promise made him by the company in respect to his agreeing to have his agency terminated and to return the unearned commissions upon the terms recited in the two alleged agreements providing therefor.

Plaintiff's entire claim to damages for breach of the alleged contract is based upon his claim that the defendant company agreed to do the things therein set out and recited, with respect to not appointing a successor agent within the period of five years and not to rewrite insurance in Owen county upon the expiration of the policies written by his agency and also not to furnish information to a succeeding agent as to the expiration dates of the policies written by him and Davis or as to the names of the insured parties carrying such insurance, upon the one and sole consideration of his agreeing and promising, in exchange therefor, to refund all unearned commissions upon the blanket cancellation of the policies made upon the company's inspection of its risks, contending that, under the terms of his 1924 contract, in case of blanket cancellations of

policies, he was not required to refund the unearned commissions thereof.

However, as to this, we find that the agency contract had between the company and plaintiff, under which he and his partner were operating at the time it was cancelled, does not recite such or any exception to the plaintiff's agreed liability to refund to appellant unearned commissions upon any cancellation made by the company of policies *"for any cause."*

This question was directly presented in the case of Stone v. Hartford Fire Insurance Company, 231 Ky. 264, 21 S. W. (2d) 281, 283, where it appears the appellant Stone had represented the Hartford Fire Insurance Company in Caldwell county up to the time its agency was closed in March, 1925; thereafter, in April, 1925, the company determined to discontinue writing insurance on farm property in Caldwell county and to cancel all outstanding policies, which it did. It then brought an action against Stone and the surety on Stone's bond to the insurance company for the return commissions on these cancellations. The lower court sustained the action of the insurance company and adjudged it recovery, and this court affirmed the judgment.

There the contention of the agent was that, "the solicitor's agreement, properly interpreted in the light of the circumstances surrounding its execution, did not provide for the general cancellation of policies issued by appellee on applications procured by Stone."

The provisions in the contract of agency in that case were practically the same as those found in this case, upon which the court there held that:

"The agreement is not ambiguous, and requires no extraneous evidence to explain its terms. It contains a provision that it can be terminated at any time at the pleasure of the insurance company, and that nothing therein should be construed to the contrary. It also contains a provision that the agent shall return to the company all unearned commissions on premiums on canceled policies and on notes not paid at maturity. These provisions, when read in connection with the provision, contained in all of the insurance policies, that the insurance company reserves the right to cancel the policies by tendering to the assured the unearned

pro rata premium after due notice to that effect, clearly mean that the company could cancel any or all of the policies at any time, and the agent would be required under his contract to return all unearned commissions on premiums that had been collected by him.''

In the later case of American Insurance Company v. Bean, 232 Ky. 111, 22 S. W. (2d) 426, 427, the court, in again considering practically the same question as presented in the Stone Case, supra, and the instant case, said:

"Most of the policies written were on farm property and were for terms of three or five years. The premium for the first year was paid in cash and for the premium for each subsequent year the insured executed a note. The agent retained his entire commission out of the first premium and forwarded the notes to the company. If the construction contended for by appellees is correct, it would be possible for the agent to write a large amount of insurance, collect his entire commissions out of the first premiums, cancel the agency contract, and the company would be deprived of the right to recover from him the unearned commissions, although none of the notes were paid or the policies were canceled either by the insured or the insurer. The contract clearly does not contemplate such a result.''

The express provision of the agency contract here before us, and set out supra, is that the agency contract had with Duvall and Davis for Owen county was not an exclusive one as to the Owen county territory and, also, that either party to the contract could terminate the agency at any time by a verbal or written notice, but it was by the terms of the contract further expressly provided that either party's exercise of such provided right of termination of the agency would not operate to release the agent from liability to refund to the company return commissions charged because of nonpayment of notes or cancellation of policies.

Such being the clearly defined liability of the plaintiff, as agent of the company, to refund all unearned commissions to the company upon the cancellation, blanket or otherwise, of policies written by the agency, and such provision of the contract being alto-

gether a reasonable and fair one for the reasons aptly stated in the Bean Case, supra, it must follow that the company had the right, without the need or necessity to bargain or to make new engagements therefor, to terminate plaintiff's agency at any time it so desired, when it thereupon became the duty and liability of the agent, under the terms of his agency contract, to return to appellant the unearned commissions advanced him on all canceled policies, whether they were canceled by blanket cancellations or for other cause.

The language of the contract is clear and explicit as to this, and must be taken to mean and intend just what it says and given such effect, from which it follows that the plaintiff's liability to refund unearned commissions on policies canceled by the company would immediately arise upon their cancellation, however made or for whatever cause, and that he, therefore, was bound to return them, even though the agency contract had been terminated.

From this it also follows that the contention of the appellee (plaintiff below), that plaintiff's promise to refund the unearned commissions was a valid and legal consideration given for the promise made by Mr. Wilbur, for the company, in his oral contract of July or August, 1927, not to do certain claimed things, is not to be sustained, in that plaintiff was then by his contract legally obligated to refund all unearned commissions.

In Wallace v. Cook, 190 Ky. 262, 227 S. W. 279, 281, the court quotes with approval the applicable rule in such case as stated in 13 C. J. 351, which is as follows:

"A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration."

It appears clear, therefore, that the oral contract, claimed made by Mr. Wilbur in exchange for plaintiff's promise to pay the company the unearned commissions upon canceled policies, is not to be taken as enforceable, even if made, in that it is apparent under

the circumstances here found that there was no valid consideration given in exchange for the new obligations thereunder alleged assumed by the company, in that plaintiff agreed to do something he was already then legally obligated to do by his existing agency contract, regardless of the further reason that the oral promise not to do the named certain things within a period of five years, even though appellee had fully performed his part of the agreement by refunding commissions, was clearly an undertaking that could not be performed in one year by it and was, therefore, unenforceable under the statute of frauds. We deem it unnecessary to pass upon this point urged, in view of our conclusion reached as to the first, and therefore express no opinion as to whether or not the appellee's performance as to his part of the agreement brings the case within the exception, adopted by us, to the "part performance" rule in respect to agreements not to be performed within a year, and taking it from out the statute of frauds, where one of the parties has fully performed his part and the other by the terms of the contract has more than one year in which to perform his part. Dant v. Head, 90 Ky. 255, 13 S. W. 1073, 12 Ky. Law Rep. 153, 29 Am. St. Rep. 369; Maloney v. Maloney, 258 Ky. 567, 80 S. W. (2d) 611.

Further, the alleged oral contract of July or August, 1927, was clearly merged in the later written contract, in regard to or covering the same matter, which was entered into by the plaintiff and appellant on October 20, 1927, as set out supra, and by the terms of which it is recited that:

"It is hereby agreed and understood on the inspections of farm business in the said company that any risks cancelled Duvall and Davis will pay the charge back commission on the return premium to the Fidelity-Phenix Fire Insurance Company. The said Company will allow pro rata return premium on said cancellation, and Duvall and Davis will be allowed to rewrite such risks as agreed upon in one of their other companies and any risks rewritten in the Fidelity-Phenix Fire Insurance Company the said Company will pay Duvall and Davis commission on the rewriting of such risks."

This "rewriting" for which the commissions were

to be paid plaintiff clearly related to risks rewritten as agreed upon during the inspection, in that the clause of the contract next above clearly indicates that such is the time referred to in saying that:

"It is hereby agreed and understood *on the inspections of farm business* in the said company that any risks cancelled Duvall and Davis will pay the charge back commission on the return premium to the Fidelity-Phenix Fire Insurance Company."

Considering these clauses together, and as all meant and intended to provide for and relate to the matter of the company's cancellation of insurance policies during the inspection, clearly the rewriting by the plaintiff of policies canceled and allowing him a commission therefor must have needs related to the same time, and, the phrase "the said Company will pay Duvall and Davis commission on the rewriting of such risks," must be interpreted in the light of its contextual language, noscitur a sociis.

It is further clear that this written contract of October 20, 1927, was intended by the parties to be a full and complete memoranda of the terms of their agreement in respect to the relative rights of the parties resulting from the termination of plaintiff's agency and the inspection then made of the company's risk, which was attended by the cancellation of many of its outstanding policies theretofore written by the agency for the company and upon which the agency had received advance payments of their commissions.

No contention is here made by plaintiff that all commissions due and owing Duvall or Davis for policies rewritten by them in the defendant company during the inspection had not in fact been paid in full. The only contention is that under the contract they were entitled to the commissions paid upon renewals or rewriting of the policies written by them while agents for the company after the inspection and during the period intervening between it and December 1, 1932, when the last of the policies so written by them expired.

This right to such commissions plaintiff contends was promised them by the company under the terms of the oral contract had with Mr. Wilbur, which we have seen (for the reasons hereinabove stated) cannot be sustained and for the further additional reason that it is manifest that such earlier agreement, whatever its

terms, was merged in the later written contract of October 20, 1927, which is altogether silent as to undertaking any such obligation, nor is it alleged or pleaded that such terms of the earlier oral agreement were omitted by fraud or mutual mistake from the subsequent one, for which reformation was asked, nor does it recite any agreement or understanding whatever as to the payment of commissions for policies later rewritten or renewed by its later appointed agent during the period intervening between its inspection then made of risks and the later expiration in December, 1932, of all the policies written by Duvall and Davis.

Other points in criticism of the findings and judgment of the trial court are urged, which, though very ably and persuasively argued as representing clearly erroneous rulings made by the trial court, we do not feel it needful or required to here discuss and thus further lengthen this opinion, in that it is sufficient for the reasons hereinabove stated, that we have concluded the judgment of the trial court was prejudiciously erroneous, for which reason the same must be, and it is, reversed.