## Pool et al. v. First Nat. Bank of Princeton.

Oct. 7, 1941.

686

R. W. Lisanby, J. Gordon Lisanby and C. C. Grassham for appellants.

James G. Ratliff, F. J. Pentecost and Pentecost & Dorsey for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming in part and reversing in part.

The appellee is a banking institution with principal place of business at Princeton, Kentucky. The appellant, R. M. Pool, was its president and in active charge of its affairs until July 1, 1937. While president he borrowed of the bank several thousand dollars. His son, appellant J. M. Pool, borrowed of it $6,150 for which R. M. Pool became surety. All of the loans were evidenced by notes which were renewed from time to time until the principals were paid. The original notes, and perhaps a few renewals, were discounted, i. e., the interest paid in advance. Each of the notes and renewals thereof re-

cited that interest at the rate of 6 per centum per annum was payable after maturity. In the year 1933 both appellants ceased paying interest, and the renewals were accepted without either collecting the interest or requiring it to be included in the face of the notes.

This action was instituted by appellee to collect interest on these notes from October 6, 1933, to the dates that the principals of said notes were retired, the interest prior to October 6, 1933, having been paid by the debtors. Appellants by answer alleged that during the depression of 1933 and subsequent years, the bank allowed many persons, including both appellants, to renew their notes without collecting interest thereon in pursuance of a policy adopted by the board of directors which was approved by the state banking commissioner and the Comptroller of Currency of the United States; and that it was agreed between appellants and the board of directors that no interest was to be charged after October 1933. This agreement was denied by the bank and much proof was introduced on both sides of the question, none of which we deem to be material for the following reasons: The original contracts between the Pools and the bank, evidenced by notes executed by the Pools and accepted by the bank, recited that interest was to be paid from the date of maturity of the respective notes. The subsequent renewals of these obligations did not constitute new contracts but merely extended the due date of the original contracts; and if the bank had agreed, as is contended by appellants, to the extension of time for the payment of the obligations without payment of interest, the agreement was without consideration and unenforceable.

It is a fundamental principle of law that a material alteration in the terms of an existing contract cannot be enforced unless a consideration for the change passes to the party against whom it is sought to enforce the altered condition. Gilmore v. Green, 14 Bush 772, 77 Ky. 772; Ogden v. Redd, 13 Bush 581, 76 Ky. 581. Neither the promise to perform an obligation nor the actual performance of it will be a good consideration for a new contract, if the obligation, promised or performed, is an obligation which the party is bound to do by a subsisting contract with the other party, at least unless there be a compromise of a bona fide dispute with reference to the obligations or rights of the parties under the

contract. In Fidelity-Phenix Fire Ins. Co. v. Duvall, 269 Ky. 300, 106 S. W. (2d) 991, 997, quoting from Wallace v. Cook, 190 Ky. 262, 227 S. W. 279, 281, it is said:

> "A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration." The texts in 17 C. J. S., Contracts, Section 112, page 466 and 12 Am. Jur. Section 88, page 582, are to the same effect. See also American Law Institute's Restatement of the Law, Contracts, chapter 3, Section 76, pages 82-86.

In each of the original contracts the Pools agreed to pay interest after maturity and that agreement was binding on them. Any alteration in its terms was unenforceable unless an adequate consideration passed to the bank in exchange for its agreement to relinquish its right to collect interest. In renewing the notes appellants did not agree to do or perform any obligation which they were not already bound to perform and no consideration passed to the bank to support its agreement, if any it had, to relinquish its right to collect the interest. As early as 1830 this court held that the acceptance of a renewal note does not extinguish the original note. Bank of Commonwealth v. Letcher, 3 J. J. Marsh. 195, 26 Ky. 195, and this rule has never been departed from so far as our research discloses. Certainly the execution of an unenforceable renewal note would not serve to extinguish an original note where no consideration passed and there was no discharge of the old obligation. Corydon Deposit Bank v. McClure, Ky., 121 S. W. 446. We are therefore of the opinion that the renewal notes do not have the effect of varying the terms of the original contracts and are merely evidentiary of the original debts; and that the agreement on the part of appellants in their original contracts to pay interest after maturity is controlling upon the parties and by reason thereof appellants are bound to pay interest on the unpaid principal from the dates of maturity of the original notes to the dates of payment of the principals. In view of this conclusion it is unnecessary for us to determine whether the president of a bank has the au-

thority to deal with himself and his son in the manner complained of in the pleadings.

R. M. Pool pleaded by way of set off that the bank was indebted to him in the sum of $1,585 for work performed by him in a law suit in which appellee and he, as trustee for one Bolivar Pettit, were named defendants. There was no evidence that the bank agreed to compensate him for his services in this respect. At the time of the institution of that action he was president of the bank, and although the litigation continued for a few months after his retirement, he was a party defendant to the suit and would have been primarily liable had recovery been had of defendants. Certainly he would not be entitled to compensation for his services, even though rendered exclusively to the bank, while he was serving as its president at an agreed salary; and, in the absence of an agreement to compensate him for his services after his retirement as president, it will be conclusively presumed he rendered the services in his own behalf as a party litigant rather than in behalf of his codefendant; therefore, no contract to pay him for said services will be implied.

R. M. Pool further alleged that he left in the bank $300 of his salary with the intention of applying it as a credit on interest of the J. M. Pool note. The evidence substantiates this claim and the court correctly gave him credit for this sum. But he further contends that he is entitled to interest on the $300 from the date it was left in the bank until the principal of the J. M. Pool note was satisfied. This contention is unsound because the $300 is to be credited to past-due interest, not to principal. As will presently appear, it was improper to allow the bank to recover interest on the uncollected interest. It follows that appellants are not entitled to collect interest on sums deposited for application to payment of interest due when the deposit was made.

J. M. Pool pleaded as a set off that he had performed work for the bank in the aforesaid lawsuit at the instance and request of his father who was president of the bank. The directors denied that any agreement was made with the board of directors or that it was notified of such employment. The Pools testified that the board was informed of this agreement and acquiesced in same. Nothing appears in the minutes of the board to substantiate appellants' claims in this respect. Appellants con-

tend that R. M. Pool, as president, had the authority to employ him under resolution adopted by the board of directors on March 11, 1937, which reads as follows :

"On motion and general discussion in regard to the Bolivar Pettit suit against this bank—the President is authorized to employ necessary attorneys to prosecute the suit to completion and President made report to the board of his actions to date in this suit."

J. M. Pool was not an attorney and the services it is claimed he rendered the bank were those of auditing, investigating, and generally assembling the facts to be used in defense of the suit. The directors testified that they had never authorized the employment of J. M. Pool or anyone in that capacity and did not know he was claiming compensation for the work he did in defense of the suit; but, on the contrary, they had understood that his work was gratuitous and was performed by him in the sole interest of his father who would have been individually liable had they been unsuccessful in the defense of the suit. The issue on this point is one of fact, and was decided by the trial court in favor of the contention of appellee. Since there was ample evidence to support its finding it will not be disturbed by this court.

It is further contended by R. M. Pool that on May 1, 1930, in consideration of money borrowed, he executed his note to the bank in the amount of $16,900, payable one year after date with interest after maturity; that the first year's interest was included in the face of the note; that he made payments on the note before it became due, and by reason thereof he is entitled to rebate of interest on the amount of each payment from the date of such payment to the due date of the note, namely May 1, 1931. His claim in respect to these items totals $611.89. He does not contend that there was a specific agreement to rebate a part of the interest in consideration of partial payment of the principal before the due date of the note. So far as we have been able to ascertain, this question has never been presented to this court, but it has been presented to courts of many sister states and without exception the following rule has been adopted:

"Where the interest is payable by the terms of the contract it becomes an integral part of the debt and

the payment of the principal sum does not prevent a subsequent recovery of interest.'' 30 Am. Jur. Section 13, page 15; New York Trust Co. v. Detroit, T. & I. R. Co., 6 Cir., 1918, 251 F. 514; Alabama City, G. & A. R. Co. v. Gadsden, 1913, 185 Ala. 263, 64 So. 91, Ann. Cas. 1916C, 573; Bassick Gold Mine Co. v. Beardsley, 1910, 49 Colo. 275, 112 P. 770, 33 L. R. A., N. S., 852; Kretzinger v. Emering, 1915, 169 Iowa 59, 150 N. W. 1038; Davis v. Harrington, 1894, 160 Mass. 278, 35 N. E. 771.

The principle underlying the rule is that there is no distinction between the agreement to pay the principal of the debt and the agreement to pay the interest on the debt. It will be assumed that the loan would not have been made had it not been for an agreement on the part of the debtor to pay the exact amount of interest recited in the contract, and, the parties having entered into a specific contract to that effect, the court will not make a new contract for them. Especially is it true where the debtor includes the amount of the interest in the face of the note, thus merging the interest with the principal and designating it for all purposes to be a part of the principal. We are in accord with the rule and are of the opinion that the trial court committed no error in this respect.

Complaint is made that the petition is defective in that it fails to allege that appellants promised to pay the interest sued for. If this is a defect it was cured by subsequent pleadings, viz., the answer alleged that appellants had not promised to pay the interest, which allegation was traversed in appellee's reply. In that manner the issue was duly presented.

However, the judgment must be reversed in part for the following reason: It permits the bank to recover interest on the uncollected interest from the date of maturity of each of the renewal notes upon the theory that it was proper to make a rest in the calculation of interest at the end of each term of the renewal notes. Since we have concluded that the renewal notes were unenforceable because the terms of the original agreement were varied without consideration, and the liability of appellants is based upon the obligations expressed in the original notes, we are of the opinion that appellee is not entitled to interest on the judgment except from the

692

date demand was made for payment of the claim sued on, which, so far as this record discloses, is the date of filing the petition.

To that. extent the judgment is reversed for proceedings consistent herewith, but in all other respects it is affirmed.