NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  14a0949n.06

Case No. 14-5574

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JAMES D. VOGEL, | ) | **FILED** |
|  | ) | Dec 30, 2014 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| E.D. BULLARD COMPANY, | ) | DISTRICT OF KENTUCKY |
|  | ) |  |
| Defendant-Appellee. | ) |  |

BEFORE:  MERRITT, WHITE, and DONALD, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Plaintiff James D. Vogel appeals the district court's grant of summary judgment to defendant E.D. Bullard Company (Bullard), dismissing five of Vogel's six claims arising out of Bullard's termination of his employment shortly after it recruited him.  We AFFIRM except as to the dismissal of the living-expenses claim, which we REMAND for further proceedings.

**I.**

Bullard, a privately held manufacturer of personal protective equipment with headquarters in Cynthiana, Kentucky, recruited Vogel, a marketing executive in the flame and gas detection products and systems industry and lifelong Minnesota resident, to be its Vice President of Marketing and Sales, a position for which Bullard had had difficulty retaining personnel.  As a result, in January 2011, Vogel left the company in Minnesota where he had

worked for twenty-six years (the last eleven as Vice President of Sales and Marketing) to work for Bullard. In late June 2011, Bullard's President and Chief Operating Officer Eric Pasch asked Vogel if he was happy that he joined Bullard. Vogel, who was disenchanted with Bullard's corporate culture, particularly Pasch's micromanagement and the extent to which Pasch impeded his efforts at learning the business and leading the Marketing and Sales department, responded that he was unsure that he was wanted or needed at Bullard and that Pasch's management style was intimidating, threatening and "in-your-face."

Pasch told Vogel they would meet again on July 6, 2011, at which time Vogel should inform Pasch whether Vogel wanted to remain at Bullard and what Vogel "brought to the table" at Bullard. At the July 6th meeting, Pasch informed Vogel that he had concluded that "Bullard is not the place for you," and terminated Vogel's employment. PID 1564. Vogel then filed this action in Minnesota state court alleging claims of breach-of-contract, fraud, negligent misrepresentation, and promissory and equitable estoppel. Bullard removed the action to federal court on diversity grounds, successfully moved for change of venue to the Eastern District of Kentucky, and moved for summary judgment. The district court dismissed five of Vogel's six claims. After the court resolved the sixth claim in Vogel's favor,[1] he appealed the earlier dismissal.

Additional facts are amply set forth in the district court's thirty-one page opinion and are not restated here except as necessary. *Vogel v. E.D. Bullard Co.*, 949 F. Supp. 2d 699, 701–05 (E.D. Ky. 2013); PID 1554-1585. All agree that Kentucky law applies in this diversity case. *See e.g., Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 384–85 (6th Cir. 2009).

---

[1] Vogel's sixth claim regarded a $20,000 signing bonus. Final judgment in his favor was entered pursuant to the court's opinion in *Vogel v. E.D. Bullard Co.*, No. 12-cv-11-JMH, 2014 WL 349307 (E.D. Ky. Jan. 31, 2014).

## II. Breach of Contract Claim

"Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at will, meaning that an employer may ordinarily discharge an employee 'for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237 S.W.3d 555, 558 (Ky. Ct. App. 2007) (quoting *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)). Stated another way, "employment for an indefinite period of time is terminable at will by either party." *Watts v. Lyon Cnty. Ambulance Serv.*, — F. Supp. 2d —, No. 5:12-CV-00060-TBR, 2014 WL 2457392, at *12 (W.D. Ky. 2014) (citation omitted).

### A.

The district court dismissed the contract claim on the basis that Vogel produced no evidence that his employment was other than at-will:

> Plaintiff concedes that he did not raise the issue of whether his employment was at-will or for a term in his pre-employment negotiations. Nonetheless, he claims that he had "an employment agreement for a definite minimum (two-year) term" based on correspondence from [Chief Executive Officer] Rick Miller and the offer letter that he received [from Chief Operating Officer Pasch]. Neither of these documents, considered alone or together, purports to guarantee a term of employment, i.e., to change the at-will quality of Vogel's employment with Defendant. Thus, Vogel presents no evidence that would remove his contract of employment with Bullard from the general rule, and his employment was subject to termination at will.

*Vogel*, 949 F. Supp. 2d at 706.

### B.

Vogel argues that there is an issue of material fact regarding whether his employment was at will because Pasch's offer-of-employment letter did not mention at-will employment, and Bullard executives' duration-based representations (two years of support and guidance), the

duration-based compensation (lucrative long-term incentive compensation beginning after his second year of employment), and the duration-based period of repayment/forgiveness of the signing bonus if Vogel voluntarily terminated his employment within two years of his employment start date, all created an employment agreement for a definite minimum two-year term.[2] Vogel relies on the following:

1.  COO Eric Pasch's letter to Vogel dated December 30, 2010, listing "the principal elements of [Bullard's] offer":

-   Base salary . . . [annualized to $200,000]
-   Participation in the Company's Short Term Management incentive program (STI), as described in the memorandum provided under separate cover . . .
-   Participation in the Company's Long Term Management incentive program (LTI), as described in the memorandum provided under separate cover. The "Target" incentive for your position under this program, when target performance is achieved, is 50% (with a maximum potential of 250%) of your base salary

. . . .

-   Signing bonus of $20,000 (taxable as ordinary income), payable 30 days after your start date, should you accept this offer, and subject to full repayment to the Company should you voluntarily terminate your employment **within two years of your start date**
-   An additional payment of $7,500 payable to you upon confirmation of a signed sales contract on your residence in Minnesota and subject to the same repayment condition as noted in the previous paragraph above

. . . .

PID 674-75. [Emphasis added.]

2. CEO Rick Miller's email to Vogel dated January 2, 2011:

Hi Jim,
. . . .
We're certainly looking forward to having you join and help lead our team. We believe that you have what it takes to rally the troops in Marketing and Sales and to chart a course that will engender followership (throughout the entire organization) to a degree that we've been missing in that realm for some time. It will be hard work (have we mentioned that enough already?); it will be exciting; and, it will also be fun! **One of my primary commitments for the next two years will be to join with Eric to support you in every way I can and in any way you need.**

---

[2] Appellant Br. at 15.

Case No. 14-5574
*Vogel v. E.D. Bullard Co.*

. . . .

PID 681[3] (emphasis added.)

## C.

The district court rejected Vogel's claim of an implied contract for a term certain:

> True, Miller stated in his letter to Vogel that he would retire from the company in two years and that he would be offering Vogel his "support and guidance" during that "transition period." Further, Bullard's offer letter to Vogel does set out that certain benefits would be available to Plaintiff with the passage of time—participation in both short-term incentive compensation in 2011 and long-term compensation beginning at the end of 2012; that he would have "[f]our weeks of paid vacation plus eleven paid holidays (includes three personal 'holidays' of your choosing)" per year; that Bullard would provide him "temporary living expenses up to $2,400 per month for up to six months or the end of September [2011] if needed"; and that he would receive a salary on a biweekly basis that added up to $200,000.00 per annum. To obtain the benefit of Miller's "support and guidance" and the benefits available over time, each of these provisions presupposed Vogel continued employment on the dates mentioned in order to qualify for and receive the benefits.

> However, no reasonable person could conclude, without more, these statements *guaranteed* his continued employment on those dates. Without more, all employees who have the potential to benefit from the counsel of a senior management official who plans to retire after a time or who participate in benefit plans after a period of employment would have at least [a] contract for that period of time instead of traditional at-will employment. Neither the case law nor common sense supports this conclusion.

> In other words, the evidence leads to the inexorable conclusion that Plaintiff had a contract of employment—employment at-will—with Defendant. There were terms and conditions set forth to obtain compensation and benefits but none of these terms or conditions suggested that Vogel would be subject to dismissal solely for cause or that his employment was for a term certain.

*Vogel*, 949 F. Supp. 2d at 707 (emphasis in original).

We agree with the district court that none of the references to a two-year period can be

reasonably understood to create a contract for employment for a fixed two-year term terminable

---

[3] On December 7, 2010, before Vogel accepted Bullard's employment offer, Miller wrote Vogel that he, Miller, had announced plans to retire from Bullard in two years and "My main focus will be to offer support and guidance to the new Vice President of Marketing and Sales during this transition period." PID 650.

only for just cause. The offer-of-employment letter set forth the proposed terms of compensation and benefits but none of those terms or conditions suggests that Vogel's employment was for a definite two-year term. Nor can Miller's email be reasonably understood as a promise of a two-year safe harbor during which Vogel could be terminated only for just cause. Further, although Vogel also claims that discussions and negotiations he had with Bullard support that he had a two-year-minimum employment contract, he points to no such discussions or negotiations.

On this record, the district court properly determined that no reasonable person could conclude that Vogel had a contract for a definite term of employment.

**D.**

Vogel also argues that he presented sufficient evidence for a reasonable jury to find that Bullard owed him a 2011 short-term incentive payment, vacation and holiday pay, and unpaid living expenses.[4]

Vogel was not entitled to receive compensation in 2011 from Bullard's "Short Term Management incentive program," which is referred to in Bullard's offer letter quoted *supra*. The program memorandum, which Vogel received, expressly states that new employees had to have at least six months' service to be eligible. PID 652-58. Vogel was employed by Bullard for only five months.

Regarding vacation days and holidays, as the district court noted, Bullard's offer letter says nothing regarding the pro-ration of vacation days. Rather, it simply lists "[f]our weeks of paid vacation plus eleven paid holidays (includes three personal 'holidays' of your choosing)" as one of the "principal elements" of the offer. Given that Bullard's Employee Handbook, which Vogel acknowledged receiving, provides that vacation is accrued weekly and "[p]aid vacation is

---

[4] Bullard incorrectly contends that Vogel did not argue below that Bullard's failure to pay these benefits amounted to a breach of contract. Appellee Br. at 28-29. Vogel's amended complaint alleged his entitlement to these benefits and he so argued in response to Bullard's motion for summary judgment.

awarded . . . on a calendar year basis," PID 531, 561, the district court properly concluded that because Vogel was not employed for an entire calendar year, Bullard was obligated to pay him only for vacation days accrued as of the date his employment was terminated, which it did. PID 1575.

Regarding living expenses, Bullard's offer letter stated that it would pay Vogel "[r]egarding relocation to Central Kentucky": 1) for up to three house-hunting trips, 2) temporary living expenses up to $2,400 per month up to six months or the end of September if needed, 3) to pack, transport, and deliver household possessions once Vogel found a new home, and 4) to store household goods for three months if necessary. PID 518. Vogel argued below that there is an issue of material fact whether Bullard is obligated to pay his living expenses for the entire six-month period, even after he was no longer employed, since the offer letter "unequivocally stated" that Bullard would pay temporary living expenses. PID 618. On appeal, Vogel asserts that the district court's conclusion that living expenses were no longer necessary accepts Bullard's argument and rejects Vogel's competing evidence, which was that he was contractually committed to pay such living expenses and thus obviously needed the monies irrespective of his employment status with Bullard. Appellant Br. at 43. Bullard argues that Vogel misses the point, in that the purpose of paying living expenses was to ease his transition to Kentucky and his transition to Bullard. Appellee Br. at 30-31. The district court agreed with Bullard, noting that "while the offer letter did not explicitly condition Bullard's payment of living expenses in July, August, and September 2011 on [Vogel's] continued employment at those times, it did provide that those expenses were to be paid 'as necessary.' Once his employment was terminated, those living expenses would no longer be 'necessary' and, thus, would be unowed." *Vogel*, 949 F. Supp. 2d at 708.

We agree with Vogel that the offer-of-employment letter can be understood to provide for the payment of temporary living expenses, if necessary, until September 2011. Unlike the other terms, the promise to pay temporary living expenses can reasonably be understood to be linked to Vogel's relocation and consequent necessity to pay for temporary accommodations, rather than his continued employment for that period. Summary judgment was thus improperly granted on this aspect of Vogel's breach of contract claim.

### E.

Vogel further argues that the district court's grant of summary judgment to Bullard on his breach of contract claim is logically and legally inconsistent with the court's subsequent ruling in his favor on his claim for declaratory judgment regarding the retention of the $20,000 signing bonus:

> [The district court ruled that,] while the letter constituted a contract as a matter of law with respect to one component (the signing bonus) of the letter, the incentive compensation, vacation pay, holiday pay and living expenses components of the same letter did not even present "issue[s] to be presented to a trier of fact". The District Court's conclusions with respect to these aspects of Vogel's breach of contract claims are logically and legally inconsistent, and the other entitlements of the letter present (at a minimum) issues to be presented to a trier of fact.

Appellant Br. at 44.

We see no logical or legal inconsistency in the district court's rulings. The district court held that the parties had an enforceable agreement regarding the signing bonus pursuant to Bullard's offer-of-employment letter of December 30, 2010, which promised a $20,000 signing bonus thirty days after Vogel started at Bullard, subject to repayment in full to Bullard only if Vogel voluntarily terminated his employment within two years of his start date. The district court held that Bullard's later modification of that agreement by inserting a provision that Vogel was obligated to repay the signing bonus in full if Bullard terminated his employment within two

years of his start date was of no effect because it lacked consideration. *Vogel*, 2014 WL 349307, at *1–2.[5] This ruling is not inconsistent with a determination that the letter did not offer or promise a fixed two-year term of employment subject only to termination for cause. *See Pool v. First Nat'l Bank of Princeton*, 155 S.W.2d 4, 6 (Ky. 1941); *Martin v. Pack's Inc.*, 358 S.W.3d 481, 484 (Ky. Ct. App. 2011).

### III.  Statutory Wage Payment Claim

Vogel argues that Bullard's failure to pay him short-term and long-term incentive compensation, vacation and holiday pay, and living expenses violated Ky. Rev. Stat. § 337.055, which provides that "[a]ny employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned . . . not later than the next normal pay period following the date of dismissal or voluntary leaving or fourteen (14) days following such date of dismissal or voluntary leaving whichever last occurs." Ky. Rev. Stat. § 337.055. "Wages" includes "any compensation due to an employee by reason of his . . . employment, including . . . vested vacation pay, . . . earned bonuses, and any other similar advantages agreed upon by the employer and the employee . . . ." Ky. Rev. Stat. § 337.010.

The district court concluded that Bullard paid Vogel all monies owed to him as of July 6, 2011, the date his employment terminated. Vogel, 949 F. Supp. 2d at 708–09. For the reasons discussed in Section II.(D), Vogel's claims for short-term and long-term incentive compensation and vacation and holiday pay fail. And, because Vogel's temporary-living-expenses claim is connected to his relocation, not his continued employment, it does not fall within the meaning of "wages." Thus, dismissal of Vogel's statutory wage payment claim was proper.

---

[5] The district court later entered an order granting Vogel relief on the signing-bonus claim, allowing Vogel to keep the $20,000 bonus, and denying Bullard relief on its counterclaim for repayment of the bonus. PID 1946, 48-49.

### IV. Fraud, Negligent Misrepresentation and Promissory and Equitable Estoppel Claims

Counts three, four, and five of Vogel's amended complaint allege that Bullard made material representations, both active and by omission, that induced him to accept its offer of employment and resign from his former position in Minnesota; that Bullard negligently misrepresented information on which Vogel justifiably relied; and promissory and equitable estoppel. PID 364-71, 72-74.

The district court granted Bullard summary judgment, determining that Bullard's representations were inactionable puffing, sales talk, opinions, or future opinions and that Vogel did not identify a material representation[6] as necessary for his fraud, negligent misrepresentation, and equitable estoppel claims. *See Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 553–54 (Ky. 2009).

### A. Fraud

To establish fraud, a plaintiff must prove by clear and convincing evidence "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). A declarant's misrepresentation must relate to an existing or past fact; if it relates to a future promise or an opinion of a future event it is not actionable. *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007).

"Fraud may be committed either by intentionally asserting false information or by willfully failing to disclose the truth." *Rickert*, 996 S.W.2d at 469. Fraud by omission requires proof of four elements: that the defendant 1) had a duty to disclose a material fact, 2) failed to

---

[6] PID 1577-82.

disclose that fact, 3) that the defendant's failure to disclose the fact induced the plaintiff to act, and 4) that the plaintiff suffered actual damages. *See Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 710 (W.D. Ky. 2010).

The district court correctly determined that the statements by Bullard executives Pasch and Miller to the effect that Bullard had a "supportive and positive atmosphere" are subjective opinions and cannot serve as the basis for a fraud action. *See McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955). The executives' statements that they would do everything possible to make Vogel's transition to Bullard as smooth as possible and help Vogel become "debt free" in a few years, and predicting only positive outcomes should Vogel join Bullard referred to future predictions and conduct. *See Radioshack Corp.*, 222 S.W.3d at 262. So too with Bullard's representation to Vogel that the global duties of his position would include international responsibility over time. *Id.* Finally, as the district court noted, Vogel conceded that he could have asked more questions regarding Bullard's corporate culture and the expectations of him and could have spoken further with Bullard employees and former employees, including the former Vice President he replaced. *See e.g., Republic Bank & Trust Co.*, 707 F. Supp. 2d at 710 ("[I]f a party could have learned of the basis of the fraud, or if he could have uncovered it by ordinary vigilance or attention, his failure to do so deprives him of a remedy.") (internal quotations and citation omitted).

## B. Negligent Misrepresentation

A plaintiff establishes negligent misrepresentation by showing that "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance

upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Presnell Constr. Managers, Inc. v. E.H. Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (adopting tort of negligent misrepresentation set forth at Restatement (Second) of Torts § 552).

The district court correctly determined that this claim fails because Vogel presented no evidence that Bullard supplied false information to him for guidance in business transactions such that he suffered a loss by justifiable reliance on the information. *Vogel*, 949 F. Supp. 2d at 710–11 (citing *Presnell*, 134 S.W.3d at 580).

## C. Equitable Estoppel

Equitable estoppel requires both a fraudulent misrepresentation as to a material fact by one party and reliance by the other party. *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010). Summary judgment on this claim was proper because, as the district court determined, Vogel presented no evidence of a fraudulent representation.

## D. Promissory Estoppel

Under Kentucky law, the doctrine of promissory estoppel provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009) (citation omitted). "The whole theory of a promissory estoppel action is that detrimental reliance becomes a substitute for consideration under the facts of a given case." *McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 12 (Ky. Ct. App. 1990) (quoting Calamari and Perillo, *The Law of Contracts*, Hornbook Series § 105 (1970)).

To survive summary judgment, Vogel needed to demonstrate a genuine issue regarding two material facts: (1) that he reasonably relied, in good faith, upon the conduct or statements of the party to be estopped, and (2) that he materially changed his position in reliance on the statements. *See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. App. 2003).

Vogel testified that during the interview process (i.e., before he accepted Bullard's offer of employment and resigned from his employment in Minnesota), CEO Miller and President and COO Pasch informed him that it would take six to twelve months to get to know the business and that he would need to absorb the business, products, and culture before making appropriate changes in marketing and sales. Vogel also testified that Edward "Jed" Bullard, Chairman of the Board and Owner of Bullard, said during his interview that Vogel would spend the first six to twelve months at Bullard assessing and analyzing the organization, processes, strategies and staff issues, PID 634 (Vogel affidavit), 726, 729-30, Vogel dep; PID 386 par. 9 (Answer to amended complaint). These statements related to the perceived complexity of the business and the expectation that Vogel would need time to learn the business and culture. They included no promises or representations that Vogel would be given six to twelve months to prove his value, during which period Bullard would forego any assessment of him unless his conduct was worthy of just cause termination. Although one can certainly perceive the unfairness in making a decision that Vogel was a bad fit during this period of acknowledged acclimation, the statements cannot fairly be viewed as a promise that Bullard would suspend judgment on Vogel's performance or suitability during his initial six to twelve months of employment.

**V.**

We AFFIRM the district court's grant of summary judgment in Bullard's favor in all respects except as to the temporary-living-expenses claim, as to which we REMAND for further proceedings consistent with this opinion.